TELLICO AIR SERVICES, INC.                                                          **Plaintiff**

vs. AMERICAN NATIONAL PROPERTY & CASUALTY COMPANY                    **Defendant**

Civil Action No. _16,185_

# SUMMONS

**To the above-named defendant: AMERICAN NATIONAL PROPERTY & CASUALTY COMPANY**

You are hereby summoned and required to serve upon Joshua M. Ball, Plaintiff's attorney, whose address is 617 West Main Street, Post Office Box 869, Knoxville, Tennessee 37901-0869, a true copy of the defense to the Complaint herewith served upon you within 30 days after service of this summons and complaint upon you, exclusive of the day of service. You will file the original pleading with the Court. If you fail to do so, judgment by default can be taken against you for the relief demanded in the complaint.

Issued and tested this _24_ day of _Feb_ , 2009.

Summons
P. Stanley

_Robert J Pennington_
**Clerk**

_P. Stanley_
**Deputy Clerk**

**NOTICE**

To the defendant(s):

Tennessee law provides a four thousand ($4,000) personal property exemption from execution or seizure to satisfy a judgment. If a judgment should be entered against you in this action and you wish to claim property as exempt, you must file a written list, under oath, of the items you wish to claim as exempt with the clerk of the court. The list may be filed at any time and may be changed by you thereafter as necessary; however, unless it is filed before the judgment becomes final, it will not be effective as to any execution or garnishment issued prior to the filing of the list. Certain items are automatically exempt by law and do not need to be listed; these include items of necessary wearing apparel for yourself and your family and trunks or other receptacles necessary to contain such apparel, family portraits, the family Bible, and school books. Should any of these items be seized, you would have the right to recover them. If you do not understand your exemption right or how to exercise it, you may wish to seek the counsel of a lawyer.

**SERVICE INFORMATION**

To the process server: Defendant, AMERICAN NATIONAL PROPERTY & CASUALTY COMPANY can be served through the Tennessee Department of Commerce and Insurance, Insurance Division, 500 James Robertson Parkway, 4th Floor, Nashville, Tennessee 37243.

**RETURN**

I received this summons on the _____ day of _____, 2009.

I hereby certify and return that on the _____ day of _____, 2009:

[ ] I served this summons and a complaint on defendant _____ in the following manner:

[ ] I failed to serve this summons within 30 days after its issuance because:

_____
**Process server**

**EXHIBIT**
_Collective_

Subject: Americans with Disabilities Act

## NOTICE

The Americans with Disabilities Act prohibits discrimination against any qualified individual with a disability. The Tennessee Judicial Branch does not permit discrimination against any individual on the basis of physical or mental disability in accessing its judicial programs. In accordance with the Americans with Disabilities Act, if necessary, the Tennessee Judicial Branch will provide reasonable modifications in order to access all of its programs, services and activities to persons with qualified individuals with disabilities.

If you require a modification to access the judicial program and/or have special needs because of a qualified disability, you must submit a written **Request for Modification** to the Local Judicial Program ADA Coordinator listed below at least five (5) business days prior to the date of the judicial program, if possible. A form is available from the Local Judicial Program ADA Coordinator or from the Tennessee Judicial Program ADA Coordinator, http://www.tsc.state.tn.us

If you need assistance, have questions or need additional information, please contact the Local Judicial Program ADA Coordinator:

ROBERT J. PENNINGTON
105 College Street, Suite 2
Madisonville, TN 37354
(423) 442-2644

If you need assistance, have questions or need additional information, you may also contact the Tennessee Judicial Program ADA Coordinator:

PAMELA TAYLOR
511 Union Street, Suite 600
Nashville, TN 37219
(615) 741-2687 OR (800) 448-7970
pamela.taylor@tscmail.state.tn.us

The Tennessee Judicial Branch Americans with Disabilities Act Policy Regarding Access to Judicial Programs, as well as a Request for Modification form may be found online at www.tsc.state.tn.us.



## IN THE CHANCERY COURT OF MONROE COUNTY, TENNESSEE

| | |
|---|---|
| TELLICO AIR SERVICES, INC. | ) |
| | ) |
| Plaintiffs, | ) |
| | ) No. _16,185_ |
| v. | ) |
| | ) |
| AMERICAN NATIONAL PROPERTY | ) |
| & CASUALTY COMPANY | ) |
| | ) |
| Defendant. | ) |

No. _16,185_

ᵗᵉ⁻ 24
1:45 pm

---

## COMPLAINT

---

COMES now the Plaintiff, Tellico Air Services, Inc. (sometimes hereinafter referred to as "Tellico Air"), and for its Complaint against American National Property & Casualty Company (sometimes hereinafter referred to as "American National") would show unto the Court as follows:

1. Tellico Air Services, Inc. is a domestic corporation with its principal office located at 350 Airport Road, Madisonville, Tennessee 37354. Mr. Larry Hamilton is the president of Tellico Air Services, Inc.

2. American National Property & Casualty Company is a foreign insurance company with its principal office located at 1949 East Sunshine, Springfield, Missouri 65899-0001. Pursuant to § 56-2-503 of the Tennessee Code, American National may be served with process through the Tennessee Department of Commerce and Insurance.

3. Jurisdiction and venue are proper in this Court pursuant to §§ 56-7-102 and 56-2-103(a)(3) of the Tennessee Code.

4. Tellico Air Services, Inc. is the owner of a 1979 Fairchild SA-226TC Metroliner II aircraft (sometimes hereinafter referred to as "Metroliner"). Tellico Air's Metroliner has an FAA Registration Number of N324TA.

Case 3:09-cv-00115-RLJ-HBG   Document 1-2   Filed 03/17/09   Page 3 of 47   PageID #: 9

5.      Tellico Air Services, Inc. had a contract of insurance with American National Property & Casualty Company that insured, among other things, the risk of property damage to Tellico Air Services, Inc.'s Metroliner aircraft. Specifically, the Policy Number of Tellico Air's insurance policy with American National is GA96-08749. The policy period for Policy Number GA96-08749 was from August 26, 2002 until August 26, 2003. A true, correct, and certified copy of the Policy of Insurance (sometimes hereinafter referred to as the "Policy") is attached hereto as Exhibit 1.

6.      On or about February 26, 2003, Mr. Larry Hamilton was flying the Metroliner owned by Tellico Air Services, Inc. and insured by American National from Monroe County, Tennessee to Dayton, Ohio. Mr. Hamilton is a properly qualified pilot who meets all conditions under the Policy. Due to bad weather conditions and malfunctioning attitude indicators, Mr. Hamilton suddenly had trouble controlling the Metroliner and keeping the Metroliner in a straight and level flight attitude.

7.      Due to the bad weather conditions and malfunctioning attitude indicators, the Metroliner experienced unusually high G-forces.

8.      The Metroliner's attitude indicators suddenly began functioning properly, and Mr. Larry Hamilton was able to regain control of the Metroliner. Mr. Hamilton was able to safely land the Metroliner in Dayton, Ohio.

9.      Mr. Hamilton immediately inspected the Metroliner after landing in Dayton, Ohio. Mr. Hamilton immediately noticed property damage to the wings of the Metroliner. Specifically, the wings' surface had been compromised due to the high G-forces placed upon them during the accident that occurred in flight.

10.     Tellico Air's policy of insurance with American National provides coverage for aircraft physical damage for Tellico Air's Metroliner aircraft.

11.     Tellico Air had paid all policy premiums when due and satisfied all other conditions precedent for insurance coverage on the Metroliner aircraft.

12.     Pursuant to the policy of insurance, Tellico Air made a timely demand upon American National to pay for the property damage to Tellico Air's Metroliner aircraft.

13.     In spite of Tellico Air's demand to pay for property damage to the Metroliner pursuant to the Policy, American National has refused to pay Tellico Air for the entirety of the property damage that Tellico Air's Metroliner aircraft sustained in the in-flight accident that occurred on or about February 26, 2003.

14.     The Metroliner aircraft owned by Tellico Air Services, Inc. sustained property damage in the amount of $236,569.19. Tellico Air made a written demand upon its insurance carrier American National for $236,569.19 to pay for the property damage to the Metroliner aircraft, but American National refused said demand.

15.     As a result of American National's refusal to pay its insured Tellico Air Services, Inc.'s demand for property damage in the amount of $236,569.19 pursuant to the Policy, American National is in breach of contract.

**WHEREFORE**, premises considered, Plaintiff Tellico Air Services, Inc. demands as follows:

(a)     That process be served upon American National Property & Casualty Company requiring American National to answer within the time permitted under law;

(b)     That a judgment of $236,569.19 be entered in favor of Tellico Air Services, Inc. and against American National Property & Casualty Company for property damage to Tellico Air's Metroliner aircraft;

(c)     That Tellico Air Services, Inc. be awarded prejudgment interest;

(d)     That Tellico Air Services, Inc. be awarded its discretionary costs;

(e)     That Tellico Air Services, Inc. be awarded any other equitable relief to which this Court may deem it entitled.

Page 3 of 4

Respectfully submitted this the 24th day of February, 2009.

Joshua M. Ball (BPR 020626)
Attorneys for Plaintiff Tellico Air Services, Inc.
HODGES, DOUGHTY & CARSON
617 West Main Street
Post Office Box 869
Knoxville, Tennessee 37901-0869
(865) 292-2307

## COST BOND

We acknowledge ourselves as surety for all costs in this case in accordance with Tenn. Code Ann § 20-12-120.

HODGES, DOUGHTY & CARSON

Joshua M. Ball

Complaint w/ exhibit

P. Stanley



**American National Property and Casualty Company**

Corporate Centre, 1949 East Sunshine, Springfield, Missouri 65899-0001    Telephone 417-887-0220

# Coverage Identification Page

| POLICY NO. | GA96-08749 | PRIOR POLICY NO. | GA96-05396 |
|---|---|---|---|

**Item**

1. NAMED INSURED: TELLICO AIR SERVICES, INC.

YOUR AGENT'S NAME AND ADDRESS:
AEROSPACE INSURANCE MANAGERS, INC.
P.O. BOX 703519

2. YOUR ADDRESS: P.O. BOX 909
MADISONVILLE, TN 37354

DALLAS, TEXAS, 75370-3519

3. POLICY PERIOD: 12:01 A.M. STANDARD TIME AT YOUR ADDRESS FROM:    08/26/02    TO 12:01 A.M. STANDARD TIME    08/26/03

4. LOCATION OF AIRCRAFT: The Aircraft will be based principally at the following airport:

HANGARED AT MONROE COUNTY AIRPORT, MADISONVILLE, TENNESSEE

5. DESCRIPTION OF AIRCRAFT AND AIRCRAFT PHYSICAL DAMAGE COVERAGE: You have told us that each of the aircraft below (1) has an FAA Standard Airworthiness Certificate unless noted below*; and (2) is solely and unconditionally owned by you unless noted differently in Item 1 or endorsements we issue.

| FAA Registration Number | AIRCRAFT YEAR, MAKE & MODEL *(Include description if not an FAA Standard certificated landplane) | TOTAL SEATS | AIRCRAFT PHYSICAL DAMAGE COVERAGE (If no amount is shown, no coverage is provided) | | |
|---|---|---|---|---|---|
| | | | AGREED VALUE | F. Not in Motion DEDUCTIBLE | G. In Motion DEDUCTIBLE |

SEE COVERAGE IDENTIFICATION CONTINUATION PAGE(S) ATTACHED

6. LIABILITY AND MEDICAL PAYMENTS COVERAGE AND LIMITS OF COVERAGE: Subject to the limitations and conditions described in your policy, the most we will pay under each coverage is shown below for each aircraft. Where no amount is shown, no coverage is provided by your policy.

| FAA Registration Number | LIABILITY TO OTHERS | A. Bodily Injury Excluding Passengers | B. Passenger Bodily Injury | C. Property Damage | D. Single Limit Bodily Injury Property Damage cluding Pass. | DL. Single Limit Bodily Injury Property Damage Limited Pass. | E. Medical Expense |
|---|---|---|---|---|---|---|---|
| | Each Person Each Occurrence | | | | | | |

SEE COVERAGE IDENTIFICATION CONTINUATION PAGE(S) ATTACHED

7. PREMIUMS: Your cost for each coverage we provide is shown below. Where no amount is shown, no coverage is provided

| COV. A | COV. B | COV. C | COV. D | COV. DL | COV. E | COV. F | COV. G | TOTAL FOR AIRCRAFT |
|---|---|---|---|---|---|---|---|---|

SEE COVERAGE IDENTIFICATION CONTINUATION PAGE(S) ATTACHED

8. ENDORSEMENTS & FORMS ATTACHED WHEN POLICY ISSUED

ENDT NOS: 1, 2, 3, 4, 5, 6

FORMS: GA100(01/2001), GA103, GA124, GA170TN

| | |
|---|---|
| COVERAGE ID CONTINUATION PAGE(S) | $23,920 |
| ENDT PREMS. | |
| ENDT PREMS. | |
| **TOTAL POLICY PREMIUM** | **$23,920** |

9. REQUIREMENTS FOR THE PILOT FLYING THE AIRCRAFT: The Aircraft must be operated in flight only by a person having the minimum qualifications shown below. The pilot must have a current and proper (1) medical certificate, (2) flight review and (3) pilot certificate with necessary ratings, each as required by the FAA for each flight. THERE IS NO COVERAGE IF THE PILOT DOES NOT MEET THESE REQUIREMENTS.

**AS ENDORSED**

10. THE USE OF THE AIRCRAFT:
The aircraft will be used for your pleasure and business related purposes where no charge is made for such use and also may be used for Other Uses described below:

Other Uses:    SEE COVERAGE IDENTIFICATION CONTINUATION PAGE(S) ATTACHED

11. ADDITIONAL INTERESTS: Payment for Aircraft Physical Damage or Loss under Coverage F or G will be made to you and the following lienholder:

LIENHOLDER INFORMATION

| | | Lienholder Interest Cov. | Loan Balance |
|---|---|---|---|
| Name | SEE COVERAGE IDENTIFICATION CONTINUATION PAGE(S) ATTACHED | | |
| Address | | | |

**CERTIFIED COPY**

Date Countersigned: AEROSPACE INSURANCE MANAGERS, INC.

Authorized Representative

Date Approved: _____ August 29, 2002

AEROSPACE INSURANCE MANAGERS, INC.
Aviation Managers

| PA99114 | 12.50 | | |
|---|---|---|---|

Form GA102A (1/01)
OLD    8/28/02

FOR COMPANY USE ONLY

**EXHIBIT**

# Co̱_ᵣage Identification Continuation ꓱge

This Coᵥ_ᵤge Identification Continuation Page is a Part of Polic̱ ᵢ.

### GA96-08749

Issued To:

## TELLICO AIR SERVICES, INC.

ITEM  Items 5, 6, 7, 10 and 11 of your Coverage Identification Page are completed or continued as follows:

5  DESCRIPTION OF AIRCRAFT AND AIRCRAFT PHYSICAL DAMAGE COVERAGE: You have told us that each of the aircraft below (1) has an FAA Standard Airworthiness Certificate unless noted below*; and (2) is solely and unconditionally owned by you unless noted differently in item 1 or endorsements we issue.

| | | | AIRCRAFT PHYSICAL DAMAGE COVERAGE | | |
| | | | (If no amount is shown, no coverage is provided) | | |
| FAA Registration Number | AIRCRAFT YEAR, MAKE & MODEL *(Include description if not an FAA Standard certificated landplane) | TOTAL SEATS | AGREED VALUE | F  Not in Motion DEDUCTIBLE | G. In Motion DEDUCTIBLE |
|---|---|---|---|---|---|
| N8777U | 1965 CESSNA 172 SKYHAWK | 4 | $28,000 | $250 | $2,500 |
| N325TA | 1977 PIPER PA31-325 NAVAJO | 7 | $200,000 | $250 | $5,000 |
| N324TA | 1979 FAIRCHILD SA-226TC METROLINER II | 2 | $300,000 | $30,000 | $30,000 |

6  LIABILITY AND MEDICAL PAYMENTS COVERAGE AND LIMITS OF COVERAGE: Subject to the limitations and conditions described in your policy, the most we will pay under each coverage we provide is shown below for each aircraft. Where no amount is shown, no coverage is provided by your policy.

| FAA Reg. Number | A. LIABILITY TO OTHERS | B. Bodily Injury Excluding Passengers | C. Passenger Bodily Injury | D. Property Damage | Single Limit Bodily Injury Property Damage otuding Pass. | DL  Single Limit Bodily Injury Property Damage Limited Pass. | E. Medical Expense |
|---|---|---|---|---|---|---|---|
| N8777U | Each Person | | | | | $100,000 | |
| | Each Occurrence | | | | | $1,000,000 | |
| N325TA | Each Person | | | | | $100,000 | |
| | Each Occurrence | | | | | $1,000,000 | |
| N324TA | Each Person | | | | | $100,000 | |
| | Each Occurrence | | | | | $1,000,000 | |
| | Each Person | | | | | | |
| | Each Occurrence | | | | | | |
| | Each Person | | | | | | |
| | Each Occurrence | | | | | | |

7  PREMIUMS: Your cost for each coverage we provide for the designated Aircraft is shown below. Where no amount is shown, no coverage is provided

| FAA Reg. Number | COV. A | COV. B | COV. C | COV. D | COV.DL | COV. E | COV. F | COV. G |
|---|---|---|---|---|---|---|---|---|
| N8777U | | | | | $1,500 | | $1,064 | $1,596 |
| N325TA | | | | | $3,250 | | $2,224 | $3,336 |
| N324TA | | | | | $1,500 | | $3,780 | $5,670 |

10  THE USE OF THE AIRCRAFT: The specified aircraft will be used for your pleasure and business use and also may be used for the Other Uses described below:

| | TOTAL AIRCRAFT PREMIUM | $23,920 |
|---|---|---|

FAA Reg. Number

| N8777U | INSTRUCTION AND RENTAL |
| N325TA | CHARTER/AIR TAXI |
| N324TA | TRANSPORTATION OF CARGO FOR HIRE (SEE ENDORSEMENT NO. 3) |

11  ADDITIONAL INTERESTS: Payment for Aircraft Physical Damage or Loss under Coverage F or G will be made to you and the specified lender below:

| FAA Reg. Number | LIENHOLDER INFORMATION | Lienholder Int. Coverage | Balance |
|---|---|---|---|
| N8777U | NONE | | |
| N325TA | 1st VINTAGE BANK, P.O. BOX 547, MADISONVLLE, TN  37354 | YES | 90% |
| N324TA | NONE | | |

| PA99114 | 12.50 | N8777U | | |
|---|---|---|---|---|
| | 12.50 | N325TA | | |
| | 12.50 | N324TA | | |
| | | | | |
| | | | | |

This is Coverage Indentification Contiuation Page  1

of  1

Form GA103 (1/00)

QLO                  FOR COMPANY USE ONLY

## Requirements for the Pilot Flying the Aircraft

This endorsement applies only to the following **aircraft**:

*If no entry is made this endorsement applies to all **aircraft** covered by **your** policy.*

This endorsement completes or changes Item 9. REQUIREMENTS FOR THE PILOT FLYING AIRCRAFT of **your** Coverage Identification Page to read as follows:

The **aircraft** must be operated **in flight** only by a Named Pilot or a person having the minimum qualifications shown below. The pilot must have a current and proper (1) medical certificate, (2) flight review and (3) pilot certificate with necessary ratings, each as required by the **FAA** for each flight. There is no coverage if the pilot does not meet the qualifications or requirements specified below for each designated use of the **aircraft**:

MINIMUM REQUIREMENTS FOR PILOT, PILOT CERTIFICATE, RATINGS AND LOGGED FLYING HOURS:

### Instruction and Rental Use

### Important Provisions Applicable to Any Aircraft Approved for Instruction and Rental

A.  All **aircraft** approved for instruction and rental may be used only for the **renter pilot's** personal **pleasure and business** purposes. No coverage is provided by **your** policy if a **renter pilot** makes a charge to **anyone** for the use of the **aircraft**.

B.  All flight instruction in the **aircraft** must be given by a properly certificated and rated flight instructor named or having the minimum flight experience shown in the "FLIGHT INSTRUCTORS" section of this endorsement for the particular category or class of aircraft. Any flight instructor approved to operate the **aircraft in flight** for instruction may also operate the aircraft for **pleasure and business** purposes.

C.  All **renter pilots** must receive a flight checkout from a properly certificated and rated flight instructor named or having the minimum flight experience shown in the "FLIGHT INSTRUCTORS" section of this endorsement for the particular category or class of aircraft prior to operating the **aircraft** solo as pilot in command.

D.  Any person holding at least a student pilot certificate may receive flight instruction in any single engine land **aircraft** not requiring a complex aircraft endorsement for pilot in command operation (or otherwise specifically approved for Student instruction by this endorsement) while accompanied by a properly certificated and rated flight instructor named or having the minimum flight experience shown in the 'FLIGHT INSTRUCTORS" section of this endorsement for the particular category or class of aircraft, or while taking a flight test with a FAA examiner or designated examiner for a pilot certificate or rating.

E.  Any person holding at least a private pilot certificate may receive flight instruction in any single engine or multi-engine land **aircraft** while accompanied by a properly certificated and rated flight instructor named or having the minimum flight experience shown in the "FLIGHT INSTRUCTORS" section of this endorsement for the particular category or class of aircraft, or while taking a flight test with a FAA examiner or designated examiner for a pilot certificate or rating.

F.  **ALL FLIGHTS BY A STUDENT PILOT** in any **aircraft** approved for student instruction must be under the direct supervision of and specifically approved by a properly certificated and rated flight instructor named or having the minimum flight experience shown in the "FLIGHT INSTRUCTORS" section of this endorsement for the particular category or class of aircraft.

*The following information is required only when the effective date of this endorsement is subsequent to the Policy effective date.*

| | |
|---|---|
| This endorsement is Endorsement No. | 1 |
| This endorsement is effective on | 08/26/02 |
| Attached to and forming a part of Policy No. | GA96-08749 |
| Issued to (First Named Insured): | TELLICO AIR SERVICES, INC. |
| Additional Premium: | INCLUDED √ |

Form GA110 (1/00)                                    ~~                                    Page 1 of 3

## Flight Instructors / Single Engine Land Aircraft

Single Engine Land Aircraft Not Exceeding 200 HP

**ANY PERSON**
PROVIDED HE/SHE HOLDS A **COMMERCIAL** PILOT CERTIFICATE WITH **AIRCRAFT SINGLE ENGINE LAND / FLIGHT INSTRUCTOR** RATING(S) AND HAS A MINIMUM OF **300** TOTAL LOGGED HOURS, INCLUDING NOT LESS THAN **10** HOURS IN THE SAME MAKE & MODEL AIRCRAFT.

## Renter Pilots / Single Engine Land Aircraft

Single Engine Land Fixed Tricycle Gear Aircraft Not Exceeding 200 HP

**ANY PERSON** HAVING A **STUDENT** PILOT CERTIFICATE, OR A **PRIVATE** OR **COMMERCIAL** PILOT CERTIFICATE WITH AN **AIRCRAFT SINGLE ENGINE LAND** RATING.

## Charter/Air Taxi Use:

Multi-Engine Land Piston Aircraft

1.  **JOHN TORBETT**
    PROVIDED HE/SHE HOLDS AN **AIRLINE TRANSPORT** PILOT CERTIFICATE WITH **AIRCRAFT MULTI-ENGINE LAND** RATING(S) AND HAS A MINIMUM OF **2,300** TOTAL LOGGED HOURS, INCLUDING NOT LESS THAN **700** HOURS IN MULTI-ENGINE AIRCRAFT AND **350** HOURS IN THE SAME MAKE & MODEL AIRCRAFT.

2.  **ANY OTHER PERSON**
    PROVIDED HE/SHE HOLDS A **COMMERCIAL** PILOT CERTIFICATE WITH **AIRCRAFT MULTI-ENGINE LAND / INSTRUMENT** RATING(S) AND HAS A MINIMUM OF **2,500** TOTAL LOGGED HOURS, INCLUDING NOT LESS THAN **1,000** HOURS IN MULTI-ENGINE AIRCRAFT AND **50** HOURS IN THE SAME MAKE & MODEL AIRCRAFT.

## Special Use -Transportation of Cargo for Hire (See Endorsement No. 3)

Multi-Engine Land Turbine Aircraft

1.  **LARRY HAMILTON**
    PROVIDED HE/SHE HOLDS A **COMMERCIAL** PILOT CERTIFICATE WITH **AIRCRAFT MULTI-ENGINE LAND / INSTRUMENT** RATING(S) AND HAS A MINIMUM OF **4,800** TOTAL LOGGED HOURS, INCLUDING NOT LESS THAN **2,200** HOURS IN MULTI-ENGINE AIRCRAFT.

    OTHER REQUIREMENTS:

    **LARRY HAMILTON** MUST SATISFACTORILY COMPLETE A GROUND AND FLIGHT TRAINING PROGRAM SPECIFIC TO THE AIRCRAFT THAT IS OFFERED BY THE AIRCRAFT MANUFACTURER OR BY A BONA FIDE FLIGHT TRAINING FACILITY PRIOR TO ANY OPERATION OF THE AIRCRAFT IN FLIGHT.

    **LARRY HAMILTON** MUST RECEIVE A MINIMUM OF **10** HOURS FLIGHT INSTRUCTION FROM A PROPERLY CERTIFICATED AND RATED FLIGHT INSTRUCTOR IN THE SAME MAKE & MODEL AIRCRAFT PRIOR TO ACTING AS PILOT IN COMMAND OF THE AIRCRAFT.

---

The following information is required only when the effective date of this endorsement is subsequent to the Policy effective date.

| | |
|---|---|
| This endorsement is Endorsement No. | 1 |
| This endorsement is effective on | 08/26/02 |
| Attached to and forming a part of Policy No. | GA96-08749 |
| Issued to (First Named Insured): | TELLICO AIR SERVICES, INC. |
| Additional Premium: | INCLUDED |

Form GA110 (1/00)                    ou                    Page 2 of 3

LARRY HAMILTON MUST LOG A MINIMUM OF 15 HOURS IN THE SAME MAKE & MODEL AIRCRAFT WHILE ACCOMPANIED BY A PILOT HAVING THE MINIMUM FLIGHT EXPERIENCE REQUIRED IN PARAGRAPH 3 OF THIS ENDORSEMENT PRIOR TO ACTING AS PILOT IN COMMAND OF THE AIRCRAFT.

2.    **ANY OTHER PERSON**
PROVIDED HE/SHE HOLDS A **COMMERCIAL** PILOT CERTIFICATE WITH **AIRCRAFT MULTI-ENGINE LAND / INSTRUMENT** RATING(S) AND HAS A MINIMUM OF **3,000** TOTAL LOGGED HOURS, INCLUDING NOT LESS THAN **1,000** HOURS IN MULTI-ENGINE AIRCRAFT, **500** HOURS IN TURBINE POWERED MULTI-ENGINE LAND AIRCRAFT AND **50** HOURS IN THE SAME MAKE & MODEL AIRCRAFT.

OTHER REQUIREMENTS:

**HE/SHE** MUST SATISFACTORILY COMPLETE A GROUND AND FLIGHT TRAINING PROGRAM SPECIFIC TO THE AIRCRAFT THAT IS OFFERED BY THE AIRCRAFT MANUFACTURER OR BY A BONA FIDE FLIGHT TRAINING FACILITY PRIOR TO ANY OPERATION OF THE AIRCRAFT IN FLIGHT.

**\*WHEN THE AIRCRAFT IS OPERATED FOR THE TRANSPORTATION OF CARGO FOR HIRE, NO COVERAGE IS PROVIDED UNDER PART THREE (LIABILITY TO OTHERS) OR PART FOUR (MEDICAL EXPENSES) OF YOUR POLICY FOR BODILY INJURY TO PASSENGERS.**

---

The following information is required only when the effective date of this endorsement is subsequent to the Policy effective date.

| | |
|---|---|
| This endorsement is Endorsement No. | 1 |
| This endorsement is effective on | 08/26/02 |
| Attached to and forming a part of Policy No. | GA96-08749 |
| Issued to (First Named Insured): | TELLICO AIR SERVICES, INC. |
| Additional Premium: | INCLUDED |

Form GA110 (1/00)                    oe                                                                 Page 3 of 3

## Charter/Air Taxi Endorsement

UNITED STATES

This endorsement applies only to the following **aircraft:   N325TA**

*If no entry is made this endorsement applies to all **aircraft** covered by **your** policy.*

Various provisions of this endorsement change **your** coverage. Read **your** entire policy to determine **your** rights and obligations and what is and is not covered. This endorsement changes the provisions of **your** policy under the following coverage parts:

## PART THREE. LIABILITY TO OTHERS

**We** agree that with respect to the U. S. Department of Transportation regulations set forth in 14 CFR Part 205, or any successor regulations (such regulations are referred to below separately or together as "the Regulations"):

1   This policy is amended as may be required to provide coverage in compliance with the provisions of the Regulations.

2.   If **we** pay any amount under this policy to comply with the Regulations (including any defense or supplementary costs associated therewith) for any **bodily injury** or **property damage** liability that **we** would not have otherwise paid under the provisions, conditions or exclusions of **your** policy except for this endorsement, **you** agree to reimburse **us** for the amounts paid by **us** to comply with the Regulations.

3.   All of the terms, conditions, limitations and exclusions of **your** policy shall apply to claims made or suits brought against **you** or **someone we protect** that are:

   A.   in excess of the minimum limit of coverage required by the Regulations; or
   B.   not governed or otherwise permitted by the Regulations.

4.   The coverage provided by this endorsement shall continue until cancelled by **us** or our **Aviation Managers** giving the minimum notice required by the Regulations or this policy, whichever is later. **You** may not cancel this policy, terminate or otherwise reduce any limit of coverage under Part Three applicable to any **aircraft** covered by this endorsement unless and until **you** have given us twenty (20) days prior written notice of when **you** want the policy cancelled or coverage reduced or terminated.

---

The following information is required only when the effective date of this endorsement is subsequent to the Policy effective date.

This endorsement is Endorsement No.            2
This endorsement is effective on               08/26/02
Attached to and forming a part of Policy No.   GA96-08749
Issued to (First Named Insured):               TELLICO AIR SERVICES, INC.
Additional Premium:                            INCLUDED √

Form GA145A (2/01)                             ao                                              Page 1 of 1

## Cargo Liability Coverage Endorsement

This endorsement applies only to the following **aircraft:** **N324TA**

*If no entry is made this endorsement applies to all **aircraft** covered by **your** policy.*

Various provisions of this endorsement extend or restrict coverage. Read **your** entire policy to determine **your** rights and obligations and what is and is not covered. This endorsement changes the provisions of **your** policy under the following coverage parts:

### PART THREE. LIABILITY TO OTHERS

LIMIT OF COVERAGE:     **$50,000**     each occurrence, and in the aggregate for all **occurrences** during the policy period.
DEDUCTIBLE:     **$250**     each occurrence

This endorsement extends **your** coverage under PART THREE (Liability to Others) to include amounts which **you** are legally required to pay for **property damage** to cargo accepted by **you** for transportation in the **aircraft** caused by an **occurrence**.

1.  Additional Words and Phrases

    Cargo means lawful property not owned by **you** or **someone we protect** accepted by **you** for transportation in the **aircraft** while such property is within the **aircraft** or while being loaded into or unloaded from the **aircraft**.

2.  What **We** Will Pay

    The most **we** will pay for **property damage** to cargo is the following amount, whichever is less:

    a.  The value of the cargo as determined by the existence of a value declaration issued by **you** at the time **you** accept the cargo; or
    b.  The actual cash value of the cargo at the time and place of the occurrence; or
    c.  The limit of coverage for any one **occurrence** shown above, and in the aggregate during the policy period.

3.  Deductible

    When **we** pay for **property damage** to cargo, **you** must pay or bear the deductible for each **occurrence** shown above.

4.  What is Not Covered

    In addition to what is not covered in PART THREE (Liability to Others), **we** also do not cover any **property damage** to cargo which is comprised of:

    a.  Live animals, birds, reptiles, fish or plants;
    b.  Accounts, bills, checks, currency, jewelry, deeds, evidences of debt, money, notes, securities or other similar valuables;

    Nor do **we** cover any claim for loss or damages arising out of:

    c.  Dishonesty by **your** agents or employees;
    d.  Deviation or delay, however caused, or loss of use, business or economic advantage or any other consequential loss;
    e.  Theft from any unattended or unlocked **aircraft;**
    f.  Injury or damage to cadavers or human remains or mental anguish resulting therefrom;
    g.  Damage to cargo from deterioration, moths, vermin, marring or scratching; or
    h.  Storage or temporary warehousing.

---

The following information is required only when the effective date of this endorsement is subsequent to the Policy effective date.

This endorsement is Endorsement No.     **3**
This endorsement is effective on     **08/26/02**
Attached to and forming a part of Policy No.     **GA96-08749**
Issued to (First Named Insured):     **TELLICO AIR SERVICES, INC.**
Additional Premium:     **INCLUDED √**

Form GA160 (1/00)                    ᴏ    Page 1 of 1



## Endorsement

This endorsement applies only to the following **aircraft**: **N324TA**

*If no entry is made this endorsement applies to all **aircraft** covered by **your** policy.*

Various provisions of this endorsement extend or restrict coverage. Read **your** entire policy to determine **your** rights and obligations and what is and is not covered.

**YOU AND WE AGREE THAT EXCEPT FOR THE PROVISIONS STATED IN ENDORSEMENT NO. 5 OF THIS POLICY, A DEDUCTIBLE OF $30,000 SHALL APPLY TO EACH AND EVERY LOSS UNDER COVERAGE F OR G OF YOUR POLICY, INCLUDING LOSS ARISING OUT OF FIRE, VANDALISM, LIGHTNING OR THEFT.**

---

The following information is required only when the effective date of this endorsement is subsequent to the Policy effective date.

This endorsement is Endorsement No.                4
This endorsement is effective on                    08/26/02
Attached to and forming a part of Policy No.        GA96-08749
Issued to (First Named Insured):                    TELLICO AIR SERVICES, INC.
Additional Premium:                                 INCLUDED √

Form GA135 (1/00)                                   a.a                                   Page 1 of 1

Case 3:09-cv-00115-RLJ-HBG   Document 1-2   Filed 03/17/09   Page 14 of 47   PageID #: 20

## Turbine Aircraft Endorsement

This endorsement applies only to the following **aircraft**:   **N324TA**

*If no entry is made this endorsement applies to all aircraft covered by your policy.*

Various provisions of this endorsement change **your** coverage. Read **your** entire policy to determine **your** rights and obligations and what is and is not covered. This endorsement changes the provisions of **your** policy under the following coverage parts:

### PART TWO. AIRCRAFT PHYSICAL DAMAGE

Paragraph 4 of Part Two, AIRCRAFT PHYSICAL DAMAGE, is changed to add the following provision:

**Wear and Tear to Engine(s).**

In addition to those matters not covered by this policy under Part Two, AIRCRAFT PHYSICAL DAMAGE, **we** will not pay for any of the following types of loss or damage to **your aircraft's** engine(s) or auxiliary power units:

-• Damage caused by heat that results from the operation, attempted operation or shutdown of the engine(s);

-• Damage caused by the breakdown, failure or malfunction of any engine part or accessory; or

-• Damage caused by an object not part of the engine or its accessories, whether the damage results from ingestion of the object or not. However, if such damage results from an **accident** during ground or flight operations and the engine requires immediate repair in accordance with the manufacturer's requirements, the damage will not be considered wear and tear to engine(s) and coverage will apply, subject to the Engine Deductible shown below.

Engine Deductible:   **$30,000**          Each Accident

---

The following information is required only when the effective date of this endorsement is subsequent to the Policy effective date.

This endorsement is Endorsement No.              5
This endorsement is effective on                      08/26/02
Attached to and forming a part of Policy No.    GA96-08749
Issued to (First Named Insured):                     TELLICO AIR SERVICES, INC.
Additional Premium:                                        INCLUDED√

Form GA146 (1/00)                          ᴀᴀ                                              Page 1 of 1

## Liability Coverage Extension

GENERAL

This endorsement applies only to the following **aircraft:**

*If no entry is made this endorsement applies to all* **aircraft** *covered by* **your** *policy.*

Various provisions of this endorsement extend or restrict coverage. Read **your** entire policy to determine **your** rights and obligations and what is and is not covered. This endorsement changes the provisions of **your** policy under the following coverage parts:

### PART THREE. LIABILITY TO OTHERS

**Your** coverage under PART THREE (Liability to Others) is extended to include within the definition of **someone we protect** any person(s) or organization(s) designated below with respect to an **occurrence** arising out of the use of the **aircraft** by **you** or **someone we protect** as permitted by **your** policy, but the limit of coverage shown in Item 6 of **your** Coverage Identification Page does not increase regardless of the number of persons or organizations protected.

This extension of coverage includes the employees, officers or directors of any designated organization as **someone we protect**, while acting within the scope of their duties as such, with respect to any **occurrence** covered by the provisions of this endorsement. This coverage extension applies to the following:

**GRAND AIR**                                   **APCO FREIGHT SYSTEMS, INC.**

**BUT ONLY WITH RESPECT TO OPERATIONS OF THE AIRCRAFT BY YOU.**

---

The following information is required only when the effective date of this endorsement is subsequent to the Policy effective date.

| | |
|---|---|
| This endorsement is Endorsement No. | 6 |
| This endorsement is effective on | 08/26/02 |
| Attached to and forming a part of Policy No. | GA96-08749 |
| Issued to (First Named Insured): | TELLICO AIR SERVICES, INC. |
| Additional Premium: | INCLUDED. |

Form GA114 (1/00)                          ᴀᴅ                          Page 1 of 1

## Lienholder's Interest Endorsement

This endorsement extends the coverage under PART TWO (Aircraft Physical Damage) to protect the interest of the Lienholder shown in Item 11 of **your** Coverage Identification Page with a "Yes" under "Lienholder Interest" or an endorsement to this policy even if coverage is otherwise invalidated by any act or omission of **yours** or **someone we protect**. The following provisions will apply to the coverage provided by this endorsement and to the following **aircraft** only:

1. Adjustment and Payment. Loss or damage to the **aircraft** under Coverage F or G will be adjusted with **you** and payment will be made to **you** and the Lienholder shown in Item 11 of the Coverage Identification Page or an endorsement to the policy.

2. Payment to Lienholder Only. If this Lienholder's Interest Endorsement applies, we will also pay the Lienholder shown in Item 11 of the Coverage Identification Page or an endorsement to this policy for loss of or damage to the **aircraft** if:

   a. There otherwise would be coverage for the claim except for any act or omission by **you** or **anyone** which results in **our** denial of payment to **you**; and
   b. The Lienholder

      (1) has notified us of any change of interest in or use of the **aircraft** of which the Lienholder was aware;
      (2) pays any premium due under this policy on demand if **you** have neglected to pay the premium; and
      (3) gives **us** a sworn proof of loss within 90 days after receiving notice from **us** of **your** failure to do so or the denial of **your** claim.

3. What **We** Will Pay. Under Paragraph 2 above, **we** will pay the Lienholder the lesser of the following amounts:

   a. The unpaid balance of the loan on the **aircraft**, less unpaid interest and installments more than 30 days overdue on the date of the loss or damage; or
   b. 90% of the **agreed value** of the aircraft; or
   c. The reasonable cost of repair of the **aircraft** after the **aircraft** has been repaired less the applicable deductible, as provided in PART TWO (Aircraft Physical Damage).

4. When **We** Will Pay. Under Paragraph 2 above, **we** will pay the Lienholder within 30 days after **you** have given us a sworn proof of loss statement or the Lienholder has done so within 90 days after receiving notice from **us** of **your** failure to do so or the denial of **your** claim.

5. **Our** Right of Recovery. If **we** pay the Lienholder for any claim and deny payment to **you** because of any act or omission that invalidates **your** coverage:

   a. **We** will take over the rights granted under **your** loan agreements with the Lienholder, and any property held as security for the loan to the extent of **our** payment; or, at **our** option, **we** may pay the Lienholder the total amount due or to become due from **you** and take a full assignment and transfer of all rights of the Lienholder against **you** and any property held as security for the loan; and
   b. **You** must reimburse **us** for the full amount of the payment we make pursuant to this endorsement.

6. What **We** Will Not Pay. **We** will not pay any claim under this endorsement if **you** or **anyone you** permit to use the **aircraft** embezzles, converts or secretes the **aircraft**.

7. Legal Action Against **Us.** No legal action shall be brought against **us** under this endorsement until its provisions have been complied with fully.

8. Cancellation Notice to Lienholder. If **we** cancel **your** Aircraft Physical Damage coverage, we will send the Lienholder 30 days prior written notice at the address shown in Item 11 of **your** Coverage Identification Page or an endorsement to the policy

---

The following information is required only when the effective date of this endorsement is subsequent to the Policy effective date.

This endorsement is Endorsement No.
This endorsement is effective on
Attached to and forming a part of Policy No.
Issued to (First Named Insured):
Additional Premium:

Form GA124 (1/00)

Page 1 of 1

## Tennessee Change Endorsement

This endorsement changes PART ONE – GENERAL PROVISIONS AND CONDITIONS, Paragraph 8, "Canceling **Your** Policy," to read as follows:

8.   Canceling **Your** Policy or Renewing **Your** Policy

**You** may cancel **your** policy at any time by telling **us** in writing in advance, through **our Aviation Managers**, of the date **you** want **your** coverage to end. If **you** cancel the policy, **we** will return 90% of the unearned premium **you** have paid.

**We** or **our Aviation Managers** can cancel this policy as follows:

a.   This policy can be canceled at any time for nonpayment of premium by mailing or delivering a notice of cancellation to the first "Named Insured" at least 10 days before the effective date of the cancellation;

b.   If this policy has been in effect less than 60 days and is not a renewal **we** may cancel at any time by mailing or delivering a notice of cancellation to the first "Named Insured" at least 30 days before the effective date of cancellation; or

c.   If this policy has been in effect for 60 days or more, or if this is a renewal of a policy **we** issued, **we** may cancel at any time by mailing or delivering a notice of cancellation to the first "Named Insured" at least 30 days before the effective date of cancellation, but only for one or more of the following reasons:

   (1)   You are convicted of a crime increasing any hazard insured against;
   (2)   Discovery of fraud or material misrepresentation by **you** or **your** representative in obtaining this insurance or in pursuing a claim under this policy;
   (3)   Failure to comply with written loss control recommendations;
   (4)   Material change in the risk which increases the risk of loss after **we** issued or renewed the insurance coverage;
   (5)   Determination by the insurance Commissioner of the State of Tennessee that the continuation of the policy would jeopardize **our** solvency or would place **us** in violation of the insurance laws of the State of Tennessee.
   (6)   Your violation or breach any of the policy terms or conditions; or
   (7)   Other reasons that are approved by the Insurance Commissioner of the State of Tennessee.

Notice of cancellation will state the reason for cancellation.

**We** will compute the premium earned by us based on the percentage of the original policy period that **we** provided coverage.

If **we** cancel **your** policy, **we** will return any premium **you** have paid that **we** have not earned, but making a refund is not a condition of cancellation.

If **we** decide not to renew this policy **we** will mail or deliver written notice of non-renewal to the first "Named Insured" and agent at least 60 days before the expiration date unless:

a.   We offered to issue a renewal policy; or
b.   You have obtained replacement coverage or have agreed in writing to obtain replacement coverage.

Any notice will be mailed or delivered to the first "Named Insured's" last known mailing address known to **us**. If notice is mailed, proof of mailing is sufficient proof of notice.

---

The following information is required only when the effective date of this endorsement is subsequent to the Policy effective date.

This endorsement is Endorsement No.
This endorsement is effective on
Attached to and forming a part of Policy No.
Issued to (First Named Insured):
Additional Premium:

Form GA170TN (1/00)                                                                  Page 1 of 1

# NOTICE OF PRIVACY POLICY

ANPAC ®
American National Property And Casualty
American National General Insurance Company
Pacific Property and Casualty Company
American National Lloyds Insurance Company
and
Independent County Mutual Insurance Company
(serviced by ANPAC®)

American National Property and Casualty Company, its subsidiaries and affiliates (ANPAC®), are committed to providing insurance and annuity products and services designed to meet your needs. We are equally committed to respecting your privacy and protecting the information about you that we may receive. We have prepared this notice to advise you what information we collect, how we use it and how we protect it.

## What Information We Collect

As an essential part of our business, we obtain certain personal information about you in order to provide a financial product or service to you. Some of the information we receive comes directly from you on applications or other forms, and may include information you provide during visits to our Web site. We may also receive information from physicians, testing laboratories and other health providers, and from consumer reporting agencies. The types of information we receive may include addresses, social security numbers, family information, current and past medical history and financial information, including information about transactions with other financial institutions. Such information may, in certain circumstances, properly be obtained without further notice to or authorization from you.

## What Information We Disclose

We do not disclose nonpublic personal information about our current or former customers to any non-affiliated entity, except as permitted by law. Examples of the disclosures which we are permitted by law to make include: disclosures necessary to service or administer an insurance or annuity product that you requested or authorized; disclosures made with your consent or at your direction; disclosures made to your legal representative; disclosures made in response to a subpoena or an inquiry from an insurance or other regulatory authority; disclosures made to comply with federal, state or local laws and to protect against fraud. Where permitted by law, such disclosures may be made without further notice to or authorization from you.

## Our Privacy Protection Procedures

We protect information about you from unauthorized access. For example we employ secure technologies in order to safeguard transmission of information about you through our web sites. Access to information about you is restricted to those individuals that need such information in order to provide products and services to you. Examples of activities requiring access to personal information include: underwriting; claims processing; reinsurance and policyholder service. Our employees and agents receive training regarding our privacy policies and violators are subject to disciplinary action. Finally, we have established and maintain procedures to comply with all state and federal laws and regulations regarding the security of personal information.

**This Notice has been provided to you in compliance with the Financial Services Modernization Act of 1999, U.S. Pub. L. 106-102, 113 U.S. Stat. 1338, for information purposes only. No action is required on your part.**

## Aircraft / Coverage Addition & Deletion Endorsement

Your policy and Coverage Identification Page is changed to ADD the following Coverage effective: **April 2, 2003**

Your policy and Coverage Identification Page is changed to ADD the following Aircraft effective:

Item 4 LOCATION OF AIRCRAFT: The Aircraft will be based principally at the following airport:

5 DESCRIPTION OF AIRCRAFT AND AIRCRAFT PHYSICAL DAMAGE COVERAGE: You have told us that each of the aircraft below (1) has an FAA Standard Airworthiness Certificate unless noted below*; and (2) is solely and unconditionally owned by you unless noted differently in item 1 or endorsements we issue.

| FAA Registration Number | AIRCRAFT YEAR, MAKE AND MODEL *(Include description if not an FAA Standard certificated landplane) | TOTAL SEATS | AIRCRAFT PHYSICAL DAMAGE COVERAGE (If no amount is shown, no coverage is provided) | | |
|---|---|---|---|---|---|
| | | | AGREED VALUE | F. Not in Motion DEDUCTIBLE | G. In Motion DEDUCTIBLE |
| N324TA | 1979 FAIRCHILD SA-226TC METROLINER II | 2 | $300,000 | $30,000 | |

6 LIABILITY AND MEDICAL PAYMENTS COVERAGE AND LIMITS OF COVERAGE: Subject to the limitations and conditions described in your policy, the most we will pay under each coverage we provide is shown below for each aircraft. Where no amount is shown, no coverage is provided by your policy.

| FAA Registration Number | LIABILITY TO OTHERS | A. Bodily Injury Excluding Passengers | B. Passenger Bodily Injury | C. Property Damage | D. Single Limit Bodily Injury Property Damage Excluding Pass. | DL. Single Limit Bodily Injury Property Damage Limited Pass. | E. Medical Expense |
|---|---|---|---|---|---|---|---|
| N324TA | Each Person | | | | | | |
| | Each Occurrence | | | | $1,000,000 | | |

7 PREMIUMS: Your additional premium for each coverage we added is shown below. Where no amount is shown, no coverage is provided

| COV. A | COV. B | COV. C | COV. D | COV. DL | COV. E | COV. F | COV. G | TOTAL FOR AIRCRAFT |
|---|---|---|---|---|---|---|---|---|
| | | | $120 | | | $1,512 | | $1,632 |

9 REQUIREMENTS FOR THE PILOT FLYING THE AIRCRAFT: The Aircraft must be operated in flight only by a person having the minimum qualifications shown below. The pilot must have a current and proper (1) medical certificate, (2) flight review and (3) pilot certificate with necessary ratings, each as required by the FAA for each flight. THERE IS NO COVERAGE IF THE PILOT DOES NOT MEET THESE REQUIREMENTS.

### NO APPROVED PILOTS

10 THE USE OF THE AIRCRAFT:
The aircraft will be used for your pleasure and business related purposes where no charge is made for such use and also may be used for Other Uses described below:
OTHER USES: STORAGE OF YOUR AIRCRAFT, EXCLUDING ANY OPERATION OF THE AIRCRAFT IN MOTION.

11 ADDITIONAL INTERESTS: Payment for Aircraft Physical Damage or Loss under Coverage F or G will be made to you and the following lienholder:

| LIENHOLDER INFORMATION | Lienholder Interest Cov. | Loan Balance |
|---|---|---|
| Name **NONE** | | |
| Address | | |

Your policy and Coverage Identification Page is changed to DELETE the following Coverage effective: **April 2, 2003**

Your policy and Coverage Identification Page is changed to DELETE the following Aircraft effective:

Item 5

| FAA Registration Number | YEAR, MAKE & MODEL *(Include description if not an FAA Standard certificated landplane) | TOTAL SEATS | AIRCRAFT PHYSICAL DAMAGE COVERAGE (If no amount is shown, no coverage is provided) | | |
|---|---|---|---|---|---|
| | | | AGREED VALUE | F. Not in Motion DEDUCTIBLE | G. In Motion DEDUCTIBLE |
| N324TA | 1979 FAIRCHILD SA-226TC METROLINER II | 2 | $300,000 | $30,000 | $30,000 |

7 PREMIUMS: Your return premium for each coverage we deleted is shown below.

| COV. A | COV. B | COV. C | COV. D | COV. DL | COV. E | COV. F | COV. G | TOTAL FOR AIRCRAFT |
|---|---|---|---|---|---|---|---|---|
| | | | | ($800) | | ($1,512) | ($2,268) | ($4,380) |

### NOTHING IS CHANGED IN YOUR POLICY BY THIS ENDORSEMENT EXCEPT AS STATED ABOVE.

The following information is required only when the effective date of this endorsement is subsequent to the Policy effective date.

This endorsement is Endorsement No. 7
This endorsement is effective on: 04/02/03
Attached to and forming a part of Policy No. GA96-08749
Issued to (First Named Insured): TELLICO AIR SERVICES, INC.
Additional Premium: ($2,748)      PA99114    12.50

Form GA108 (01-00)

ISSUED   04/17/63   ss

Page 1 of



THIS ENDORSEMENT CHANGES YOUR POLICY. PLEASE READ IT CAREFULLY

## Coverage Identification Page Limited Change Endorsement

This endorsement applies only to the following **aircraft:**    N325TA

*If no entry is made this endorsement applies to all aircraft covered by your policy.*

The following items of your Coverage Identification Page are changed or completed by this *endorsement (if no entry is made, no change or completion is made):*

### Coverage Identification Page Item

1.   NAMED INSURED:

2.   ADDRESS:

4.   LOCATION OF THE AIRCRAFT. The aircraft will be based principally at:

5.   DESCRIPTION OF THE AIRCRAFT:

| FAA Number | Year, Make & Model Aircraft | Total Seats | Agreed Value | Cov. F. Deductible NIM | Cov. G. Deductible IM |
|---|---|---|---|---|---|
| | | | | | |

10.   USE OF THE AIRCRAFT:

11.   LIENHOLDER NAME AND INFORMATION:

| | Lienholder Interest Coverage | Loan Balance |
|---|---|---|
| PEOPLES BANK OF MONROE COUNTY<br>P.O. BOX 128<br>MADISONVILLE, TN 37354 | YES | 90% |

The following information is required only when the effective date of this endorsement is subsequent to the Policy effective date.

This endorsement is Endorsement No.                         **8**
This endorsement is effective on                             **05/06/03**
Attached to and forming a part of Policy No.                 **GA96-08749**
Issued to (First Named Insured):                             **TELLICO AIR SERVICES, INC.**
Additional Premium:                                          **INCLUDED**

Form GA109 (1/00)

Page 1 of 1

ISSUED    5/13/03    LP

Case 3:09-cv-00115-RLJ-HBG   Document 1-2   Filed 03/17/09   Page 21 of 47   PageID #: 27

## Coverage Identification Page Limited Change Endorsement

This endorsement applies only to the following aircraft:  **N324TA**

*If no entry is made this endorsement applies to all aircraft covered by your policy.*

The following items of your Coverage identification Page are changed or completed by this *endorsement (if no entry is made, no change or completion is made)*:

### Coverage Identification Page Item

1   NAMED INSURED:

2.   ADDRESS:

4.   LOCATION OF THE AIRCRAFT. The aircraft will be based principally at:

5.   DESCRIPTION OF THE AIRCRAFT:

| FAA Number | Year, Make & Model Aircraft | Total Seats | Agreed Value | Cov. F. Deductible NIM | Cov. G. Deductible IM |
|---|---|---|---|---|---|
| | | | | | |

10.   USE OF THE AIRCRAFT:

11.   LIENHOLDER NAME AND INFORMATION:

| | Lienholder Interest  Coverage | Loan Balance |
|---|---|---|
| **PEOPLES BANK OF MONROE**<br>**P.O. BOX 128**<br>**MADISONVILLE, TN  37354** | **NO** | |

The following information is required only when the effective date of this endorsement is subsequent to the Policy effective date.

This endorsement is Endorsement No.  **9**
This endorsement is effective on  **05/06/03**
Attached to and forming a part of Policy No.  **GA96-08749**
Issued to (First Named Insured):  **TELLICO AIR SERVICES, INC.**
Additional Premium:  **INCLUDED** ✓

Form GA109 (1/00)

ISSUED    5/13/03    LP

Page 1 of 1

Aircraft Insurance Policy



American National Property and Casualty Company
Corporate Centre
1949 East Sunshine
Springfield, Missouri 65899-0001

Form 04448 (R-6597)

# Where to Find

## Coverage Identification Page

Your Insurance Company Name ............................................. Top Left
Your Policy Number ......................................................... Top Left
Prior Policy Number ....................................................... Top Right
Your Agent's Name and Address ....................................... Top Right
Named Insured ............................................................... Item 1
Your Address ................................................................. Item 2
Your Policy Period .......................................................... Item 3
Location of Aircraft ......................................................... Item 4
Description of Aircraft and
Physical Damage Coverage ............................................. Item 5
Liability and Medical Payments Coverage
and Limits of Coverage ................................................... Item 6
Premiums ..................................................................... Item 7
Endorsements Attached When
the Policy is Issued ........................................................ Item 8
Requirements for the Pilot Flying the Aircraft ....................... Item 9
Use of the Aircraft .......................................................... Item 10
Additional Interests ........................................................ Item 11
Signature of an Authorized
Representative and Aviation Managers ............................... Bottom

## Part One. General Provisions and Conditions

1. Words and Phrases ..................................................... Page 1
2. Our Obligations and Your Duties .................................... 3
3. Requirements for the Pilot Flying the Aircraft .................... 3
4. The Use of the Aircraft ................................................. 3
5. When and Where You Are Covered ................................ 3
6. If there is an Accident or Occurrence ............................. 3
7. Changing Your Policy .................................................. 4
8. Canceling Your Policy .................................................. 4
9. Other Coverage .......................................................... 4
10. Transfer of Interest in Your Policy ................................ 5
11. Our Right of Recovery ................................................ 5
12. State Insurance Statutes ............................................ 5
13. Legal Action Against Us ............................................. 5
14. Concealment and Misrepresentation ............................ 5
15. Inspection and Audit .................................................. 5

## Part Two. Aircraft Physical Damage

1. What We Cover .......................................................... Page 6
2. What You Must Pay or Bear (Deductible) ......................... 6
3. What We Will Pay (Less Deductible) ............................... 6
4. What We Will Not Pay .................................................. 7
5. What You Must Do ...................................................... 8
6. When We Will Pay ....................................................... 8
7. Theft ........................................................................ 8
8. Disappearance ........................................................... 8
9. Reinstatement of Coverage ........................................... 8

## Part Three. Liability to Others

1. What We Cover ........................................................... Page 9
2. Who is Protected ........................................................ 9
3. Who is Not Protected ................................................... 10
4. What is Not Covered .................................................... 10
5. Additional Protection ................................................... 11

## Part Four. Medical Expense

1. What We Will Pay ....................................................... Page 12
2. Whom We Will Pay ...................................................... 12
3. What We Will Not Pay .................................................. 12
4. Effect of Payment ....................................................... 12
5. Proof of Claim ............................................................ 12
6. Legal Action for Medical Expenses ................................ 12

## Part Five. Special Provisions and Conditions

1. Newly Acquired Aircraft ............................................... Page 13
2. Temporary Use of Substitute Aircraft ............................. 13
3. Use of Another Aircraft ................................................ 13
4. What Coverage We Provide Under this Part ..................... 13
5. What We Will Not Cover ............................................... 13

Endorsements      If any, attached behind Coverage Identification Page

# Part One. General Provisions and Conditions

Here are some matters you need to be aware of before you read the other Parts of your policy that explain your coverage.

## 1 Words and Phrases

The following words and phrases have special meaning throughout the policy.

a. **You** and **your** mean the person(s) or organization(s) named in Item 1 of the Coverage Identification Page under the heading "Named Insured."

b. **Someone we protect** means any person or organization we provide coverage to through this policy other than **you**.

c. **Anyone** or **others** mean any person or organization other than **you** or **someone we protect**.

d. **We, us** or **our** means the insurance company named on the Coverage Identification Page.

e. **Aviation Managers** means Aerospace Insurance Managers, Inc. which manages our aviation insurance business for **us**.

f. **Aircraft** means the aircraft owned by **you** which is shown in Item 5 of **your** Coverage Identification Page or qualifying under PART FIVE of **your** policy. It includes the airframe, landing gear, propulsion system (including engine(s), accessories and propeller(s) or rotor(s)), flight and engine instruments, avionics, electrical system, flight control system, fuel system, and any hydraulic and pressurization system. Parts usually mounted or attached to the **aircraft** are included while temporarily removed so long as they are not replaced by other parts.

g. **Agreed value** means the amount of money shown in Item 5 of the Coverage Identification Page. This is the amount **you** and **we** have agreed **your aircraft** is worth and the maximum amount of Aircraft Physical Damage coverage **we** provide.

h. **In motion** means when the **aircraft** is moving under its own power or the resulting momentum.

i. **In flight** means when movement of the **aircraft** begins for takeoff until completion of the landing run.

j. **Passenger** means any person who is in the **aircraft** or getting in or out of it. If more than one of the **aircraft** shown in Item 5 of **your** Coverage Identification Page is involved in one occurrence, every person who is in any of the **aircraft** is a passenger.

k. **Bodily Injury** means physical injury to a person, including sickness, disease or death.

l. **Property damage** means damage to or destruction of tangible property, including any resulting loss of use of that property. It does

---

not include damage to or destruction of the **aircraft** or any other property **you** or **someone we protect** under **your** policy owns, has charge of, or transports in the **aircraft**.

m. **Accident** means a sudden event during the policy period, neither expected nor intended by **you** or **someone we protect**, that involves the **aircraft** and causes physical damage to or loss of the **aircraft** during the policy period.

n. **Occurrence** means a sudden event or repeated exposure to conditions, involving the **aircraft** during the policy period, neither expected nor intended by **you** or **someone we protect**, that causes **bodily injury** or **property damage** to others during the policy period. All **bodily injury** or **property damage** resulting from the same general conditions will be considered to be caused by one occurrence. If more than one of the **aircraft** shown in Item 5 of **your** Coverage Identification Page is involved in the same occurrence, all **bodily injury** or **property damage** resulting from the involvement of all of the **aircraft** will be considered to be caused by one occurrence.

o. **Federal Aviation Administration (FAA)** means the authority of the United States of America having jurisdiction over civil aviation or its counterpart in another country.

p. **Student Pilot** means any pilot holding a valid student pilot certificate issued by the **FAA** who is receiving flight instruction or operating the **aircraft** solo under the direct supervision and flight endorsement of a FAA Certified Flight Instructor.

q. **Renter Pilot** means any pilot meeting the requirements of Item 9 of **your** Coverage Identification Page who is renting the **aircraft** from **you**

r. **Pleasure and Business** means use of the **aircraft** by **you** or by **someone we protect** for personal and business-related purposes where no charge is made for such use. **You** or **someone we protect** may receive reimbursement for expenses incurred in operating the **aircraft** provided such reimbursement is limited to expenses allowable, if any, to a Private Pilot under Part 61 of the **FAA** regulations.

s. **Instruction and/or Rental** means use of the **aircraft** for the instruction of, or rental to, others for their **pleasure and business** use. **You** or **someone we protect** may also use the **aircraft** for **pleasure and business** use.

t. **Charter/Air Taxi** means use of the **aircraft** for transporting passengers or freight for hire, and use by **you** or **someone we protect** for **pleasure and business** purposes.

u. **Commercial** means use of the **aircraft** for **instruction and/or rental** use, **charter/air taxi** use and use by **you** or **someone we protect** for **pleasure and business** purposes.

v. **Flying Club** means use of the **aircraft** by **your** members for their **pleasure and business** Use. A member is any person having an ownership interest in the **aircraft** or the organization shown in Item 1 of the Coverage Identification Page. **You** may charge membership fees and dues and **you** may also charge the members fees for use of the **aircraft**.

## Our Obligations and Your Duties

We agree to provide coverage to you and someone we protect if you pay the premium and comply fully with the policy requirements, but if you do not, or someone we protect does not, then we are not obligated either to you or to someone we protect. We have the right to deduct any premium or other monetary obligations owed to us from any payment we make.

### Requirements for the Pilot Flying the Aircraft

You must make certain that the pilot operating the aircraft in flight meets the requirements shown in Item 9 of the Coverage Identification Page. There is no coverage under the policy for any accident or occurrence involving operation of the aircraft in flight if the pilot does not meet these requirements.

### The Use of the Aircraft

You must make certain that the aircraft is used for the purposes stated in Item 10 of the Coverage Identification Page. There is no coverage under the policy if the aircraft:

a. is used for any purpose not stated in Item 10 of the Coverage Identification Page;

b. is used for any unlawful purpose;

c. use requires a special permit or waiver from the FAA; or

d. airworthiness certificate is not in full force and effect or has been converted to a restricted or experimental certificate unless stated in Item 5 of the Coverage Identification Page.

### When and Where the Policy Provides Coverage

This policy provides coverage during the policy period shown in Item 3 of the Coverage Identification Page while the aircraft is within the United States (excluding Alaska and Hawaii), Canada, Mexico, or while en route between these territories.

### If there is an Accident or Occurrence

In the event of an accident or occurrence, you or someone we protect must:

a. promptly notify us or our Aviation Managers and describe how, when and where the accident or occurrence happened and give the names and addresses of witnesses, injured persons and all persons onboard the aircraft.

b. cooperate with us in the investigation, settlement or defense of any claim;

c. answer under oath questions asked by us or anyone we designate;

d. promptly send us copies of any notices or legal papers received relating to the accident or occurrence;

3

e. help us in obtaining and giving evidence, attending hearings and trials, and getting witnesses to testify; and

f. promptly notify the police if your aircraft or any part of it is stolen or vandalized.

In the event of an accident or occurrence, you and someone we protect must not:

g. make any statement about the accident or occurrence to others without our permission, except to government authorities making an official investigation; or

h. make any voluntary payments, assume any obligation or incur any expense without our permission, except for emergency first aid to others or for protection of the aircraft from further loss.

7. Changing the Policy

If you wish to change anything in your policy, you or your representative should contact us through our Aviation Managers, but no change occurs until you or your representative is notified in writing by our Aviation Managers of our agreement to change the policy.

8. Canceling the Policy

You may cancel the policy at any time by telling us in writing and in advance, through our Aviation Managers, of the date you want the coverage to end. If you cancel the policy, we will refund 90% of the unearned premium you have paid.

We or our Aviation Managers may cancel this policy at any time by mailing or delivering a notice of cancellation to you at the address shown in Item 2 of the Coverage Identification Page at least:

a. 10 days before the effective date of cancellation if we cancel for nonpayment of premium; or

b. 30 days before the effective date of cancellation if we cancel for any other reason.

Proof of mailing or delivery of the notice is sufficient proof of notice. We will compute the premium earned by us based on the percentage of the original policy period that we provided coverage.

We will return to you any premium that you have paid that we have not earned, but making the refund is not a condition of cancellation.

However, if we pay or have paid the agreed value of the aircraft, less any applicable deductible under the Aircraft Physical Damage coverage, we are entitled to the total Aircraft Physical Damage premium shown on the Coverage Identification Page for the aircraft on which we made or permit us to payment. You agree to pay any premium that may be due or permit us to deduct such premium from our loss payment.

9. Other Coverage

If there is other coverage protecting you or someone we protect for an accident or occurrence covered by this policy, we will pay only the

4

percentage portion that the applicable limit of coverage of this policy bears to the total of the applicable limits of coverage for all policies.

If there is an **accident** or **occurrence** covered by **your** policy involving the Temporary Use of Substitute Aircraft or Use of Another Aircraft, **your** policy will be excess over any other policy protecting **you**.

If there is other insurance covering the **accident** or **occurrence** issued through **our Aviation Managers**, **we** will not pay more than the limits of coverage of the policy having the greatest limits.

**Transfer of Interest in Your Policy**

Neither **you** nor **someone we protect** can transfer an interest in this policy without **our** written consent through **our Aviation Managers**. If **you** die during the policy period, **your** legal representative will have all of **your** rights and duties under the policy while setting **your** estate if **we** are notified through **our Aviation Managers** within 60 days of **your** death.

**Our Right of Recovery (Except PART FOUR – Medical Expense)**

If **we** make any payment, **we** will take over **your** right to recover the payment from anyone who is responsible. **You** and **someone we protect** must do everything necessary to transfer this right of recovery to **us**, including allowing suit to be brought in **your** name or in the name of **someone we protect**. **You** and **someone we protect** must do nothing that will interfere with, limit or waive **our** right to recover.

**State Statutes**

Any statement or provision of this policy which conflicts with the laws of the state shown in Item 2 of the Coverage Identification Page is hereby amended by **us** to conform to the laws of such state.

**Legal Action Against Us**

No legal action shall be brought against **us** until the policy provisions have been complied with fully. No one shall have the right to:

a. join **us** as a party to any legal action brought against **you** or **someone we protect**; or
b. bring **us** into any **legal** action to determine **your** liability or the liability of **someone we protect**.

**Concealment or Misrepresentation**

**We** do not provide coverage for **you** or **someone we protect** if **you** or **someone we protect** has concealed or misrepresented any material fact or circumstance relating to the policy either before or after an **accident** or **occurrence**.

**Inspection and Audit**

**We** will have the right, but shall have no obligation, to inspect the **aircraft** and records during and up to 1 year after the policy period.

5

---

# Part Two. Aircraft Physical Damage Coverage

Review Item 5 of **your** Coverage Identification Page to confirm the Aircraft Physical Damage coverage that has been issued to **you**. Please note also the **agreed value** of the **aircraft** and the amount for which **you** are responsible (deductible). This coverage is for **your** benefit and not for the benefit of **anyone** else in possession of the **aircraft**.

1. What We Cover

a. Coverage F covers direct physical loss of or **damage** to the **aircraft** caused by an **accident** while the **aircraft** is not **in motion**, and

b. Coverage G covers direct physical loss of or damage to the **aircraft** caused by an **accident** while the **aircraft** is **in motion**.

2. What You Must Pay or Bear (Deductible)

When **we** pay for loss of or damage to the **aircraft**, **you** must first pay or bear one of the following amounts unless no deductible applies:

a. Not **In Motion** Deductible. The amount shown in Item 5F of **your** Coverage Identification Page must be paid or borne by **you** when loss or damage occurs under Coverage F.

b. **In Motion** Deductible. The amount shown in Item 5G of **your** Coverage Identification Page must be paid or borne by **you** when loss or damage occurs under Coverage G.

c. No Deductible. **We** will not subtract either deductible amount if the loss or damage is caused by:

(1) fire, lightning, explosion, theft or vandalism;
(2) an accident involving another aircraft **we** insure except those **we** insure for **you**; or
(3) an accident when the **aircraft** is dismantled and being transported.

3. What We Will Pay (Less Deductible)

a. Destroyed **Aircraft**. If the cost of repair when added to the value of the **aircraft** after it is damaged and prior to repairs equals or exceeds the **agreed value**, it is a destroyed **aircraft**.

If the **aircraft** is destroyed, **we will pay the agreed value of the aircraft**, less the applicable deductible. **We** will be entitled to ownership of the **aircraft** upon payment.

b. Damaged **Aircraft**. If the **aircraft** is damaged and not destroyed, **we** will pay the reasonable cost of repair after the **aircraft** has been repaired, but **we** will not pay more than the **agreed value**, less the applicable deductible.

If the **aircraft** is damaged by hail, **we** will pay the reasonable cost of repair, after the **aircraft** has been repaired, of the hail damage that affects the airworthi-ness of the **aircraft**, and an amount not exceeding

6

10% of the agreed value for hail damage that does not affect the airworthiness of the aircraft, less the applicable deductible.

If the estimated cost of repair, including any amount payable for hail damage not affecting the airworthiness of the aircraft, is more than the agreed value of the aircraft, we will pay the agreed value less the applicable deductible, and we will be entitled to ownership of the aircraft upon such payment.

Cost of repair includes necessary labor at straight time rates, parts and materials of similar kind and quality and the least expensive transportation charges necessary to repair the aircraft and return it to the place where the damage occurred or its home airport, whichever is nearer. If you are authorized by the FAA to perform, and you elect to perform, your own repairs, you agree to supply materials, parts and labor at your cost, excluding overtime payments. If you incur a labor cost for work performed by others, we agree to increase the allowance for your labor costs by 50% to help you defray your cost of overhead and supervision.

**What We Will Not Pay**

We will not pay for physical loss of or damage to the aircraft:

*Pilots and Use*
a. Unless the requirements regarding Pilots in Item 9 of the Coverage Identification Page and Use (Item 10) are met;

*Wear and Tear*
b. Caused by wear or tear, deterioration, freezing, mechanical or electrical breakdown or failure, but we will pay for other direct physical loss or damage to the aircraft that results from any of these causes;

*Tires*
c. Tires, unless caused by theft or vandalism, or the loss or damage is the result of other loss or damage we cover;

*Seaplane-Amphibian*
d. If it is equipped for water takeoffs and landings unless the aircraft is identified as a seaplane or amphibian in Item 5 of the Coverage Identification Page;

*Ownership and Other Interests*
e. If you lease, sell or mortgage all or some of your interest in the aircraft unless all interests are identified in either Item 1 or 11 of the Coverage Identification Page or in an Endorsement;

*War-Confiscation*
f. Caused by terrorist activities or arrest, restraint, seizure, confiscation, detention by or at the direction of any government; or caused by declared or undeclared war;

*Radiation*
g. Directly or indirectly caused by or arising out of ionizing radiation or contamination by radioactivity from any source, or

*Embezzlement, Conversion or Secretion*
h. If anyone to whom you relinquish possession of the aircraft embezzles, converts or secretes the aircraft.

7

We also will not pay for depreciation, loss of use, loss of profits, loss of guaranty or warranty, or any other economic or consequential damage of any kind.

5. **What You Must Do**

If the aircraft is damaged, you must:

*Protect the Aircraft*
a. Do all you can to protect the aircraft from further loss, and we will pay you for all reasonable expenses incurred by you in protecting it.

*Proof of Loss*
b. Give us a sworn Proof of Loss statement within 90 days of the loss.

*Show Us the Physical Damage*
c. Show us the physical damage to the aircraft before repair or disposition.

*Show Us the Records*
d. Show us all records you have that would prove the amount of loss

6. **When We Will Pay**

We will pay for loss of or damage to the aircraft covered by your policy within 30 days after you have given us a sworn Proof of Loss statement and you and we agree on the amount.

7. **Theft**

If the aircraft or any part of it is stolen and recovered before we have paid for it, we may return it to you along with payment for any physical damage to it.

8. **Disappearance**

We will consider your aircraft to be lost in flight if it disappears and it cannot be located within 60 days.

9. **Reinstatement of Coverage**

If your aircraft is damaged, the amount of coverage for the aircraft will be reduced by the amount of the damage. The coverage will be automatically increased, at no additional premium, by the cost of the repairs completed until the agreed value has been restored or the policy expires. If, however, we pay as much as the agreed value, less the applicable deductible, we are entitled to the total Aircraft Physical Damage premium for the aircraft on which we made or make the payment.

8

# Part Three.   Coverage for Liability to Others

Review Item 6 of your Coverage Identification Page to confirm the particular liability coverage and limits issued to you.

## 1. What We Cover

We will pay for the damages that you, or someone we protect, are legally required to pay for bodily or property damage injury to others caused by an occurrence during the policy period.

a. Coverage A covers bodily injury to persons other than passengers in the aircraft. The most we will pay for bodily injury to any one person is shown under Item 6A opposite "each person." The most we will pay for bodily injury to all persons is shown in Item 6A opposite "each occurrence." We will not pay for bodily injury to passengers under Coverage A.

b. Coverage B covers bodily injury to passengers in the aircraft. The most we will pay for bodily injury to any one passenger is shown under Item 6B opposite "each person." The most we will pay for bodily injury to all passengers is shown in Item 6B opposite "each occurrence" other than passengers under Coverage B.

c. Coverage C covers property damage. The most we will pay for property damage is shown in Item 6C opposite "each occurrence."

d. Coverage D covers bodily injury and property damage in a combined limit of liability for each occurrence. Where the word "including" is shown in Item 6D, the most we will pay for bodily injury to all passengers and all others and property damage is shown under Item 6D opposite "each occurrence." Where the word "Excluding" is shown in Item 6D, the most we will pay for bodily injury to all persons and property damage is shown under Item 6D opposite "each occurrence," but we will not pay for bodily injury to passengers.

e. Coverage DL covers bodily injury to passengers and others and property damage in a combined single limit of liability for each occurrence which includes a lower limit of coverage for each passenger. The most we will pay for bodily injury to each passenger is shown in Item 6DL opposite "each person." The most we will pay for all bodily injury and property damage is shown in Item 6DL opposite "each occurrence."

## Who Is Protected (You and Someone We Protect)

Except for those entities and persons described below, your bodily injury and property damage liability coverage protects you and any person you permit to operate the aircraft (this is someone we protect except as provided otherwise in paragraph 3 below). You and someone we protect are protected separately, but the limits of coverage shown in Item 6 of the Coverage Identification Page do not increase regardless of (a) the number of the entities or persons protected, or (b) the number of aircraft involved in the occurrence.

9

## 3. Who Is Not Protected

Your bodily injury and property damage coverage does not protect:

a. *Employees*
Any employee for injuries to any person who is in the course and scope of employment by the same employer;

b. *Aviation Business Activities*
Any persons or organizations (other than you), or employees or agents thereof, that make, sell, rent, repair or service aircraft or components, operate an airport facility, or provide instruction, pilot or flight service, where an occurrence arises out of any of these activities.

c. *Renter Pilots*
Any renter pilot

## 4. What Is Not Covered

We do not cover any:

a. *Pilots and Use*
Bodily injury or property damage unless the requirements of the Coverage Identification Page regarding Pilots (Item 9) and Use (Item 10) are met;

b. *Employees*
Bodily injury to any person in the course and scope of employment by you or by someone we protect for any claim against you, against someone we protect, or against a fellow employee.

c. *Property*
Property damage to property which you or someone we protect owns, has charge of, or transports in the aircraft,

d. *Intentional Acts*
Bodily injury or property damage that is intentionally caused by you or by someone we protect unless done while in flight to prevent dangerous interference with the aircraft,

e. *Injury to You*
Bodily injury sustained by you or damages claimed as a consequence of such bodily injury.

f. *Student Pilots*
Property damage or bodily injury if the aircraft is being operated in flight by a Student Pilot with passengers unless a passenger is a pilot acting as pilot in command with the minimum requirements stated in Item 9 of your Coverage Identification Page.

g. *Assumed Liability*
Bodily injury or property damage that you or someone we protect has agreed to assume.

h. *Ownership and Other Interests*
Bodily injury or property damage liability if you lease, sell or mortgage all or some of your interest in the aircraft unless all interests of others are stated in Item 1 or Item 11 of the Coverage Identification Page or in an Endorsement;

10

*Radiation*
**Bodily injury** or **property damage** that is directly or indirectly caused by or arises out of ionizing radiation or contamination by radioactivity from any source; or

*Noise, Pollution, Electrical or Other Interference*
**Bodily injury** or **property damage** that is directly or indirectly caused by or arises out of:

(1) Noise, vibration or sonic boom;
(2) Pollution and/or contamination of any kind;
(3) Electrical and/or magnetic interference; or
(4) Interference with the use of property;

unless caused by or resulting from an **occurrence**.

### Additional Protection

**We** also provide the following additional protection with each coverage under PART THREE as long as **we** have not paid, offered to pay, or tendered the limits of coverage that **you** have purchased.

**We** will:

a. *Defend Claims*
Defend at **our** expense with attorneys **we** choose, any claim or legal action against **you** or **someone we protect** with respect to any claims for **bodily injury** or **property damage** resulting from an **occurrence we** cover. **We** may investigate, negotiate, or settle any claim or legal action as **we** elect;

b. *Pay Expenses*
Pay the expenses of, and court costs incurred in, claims or legal actions **we** defend;

c. *Reimburse Expenses*
Reimburse **you** and **someone we protect** for all reasonable expenses incurred at **our** request, but **we** will not pay for loss of wages or earnings;

d. *Pay Interest*
Pay post judgment interest on the part of a judgment against **you** or **someone we protect** that **we** are obligated to pay until **we** have made payment or tendered or deposited it in court;

e. *Pay Costs of Bonds*
Pay premiums on bonds required to release attachments and to appeal from judgments **we** elect to appeal, but **we** will not pay for bonds covering any aggregate amount more than the applicable limit of coverage; and

f. *Comply with Financial Responsibility Laws*
Comply with the provisions of any aircraft financial responsibility statute if **we** certify **your** policy as proof of **your** future financial responsibility under that statute. **We** will not, however, pay more than the limits of coverage shown in Item 6 of the Coverage Identification Page. **You** agree to reimburse **us** for any amount **we** have to pay in complying with the statute that **we** would not otherwise have had to pay.

11

# Part Four. Medical Expense Coverage

Review Item 6E of **your** Coverage Identification Page to confirm the Medical Expense coverage issued to **you**.

1. What **We** Will Pay

   **We** will pay the reasonable and necessary medical expense incurred within one year for injuries to **you** and any **passenger** caused by an **occurrence** while the **aircraft** was operated by **you** or **someone we protect**. Medical expenses include the cost of medical, surgical, dental, hospital, professional nursing, ambulance or funeral services. The most **we** will pay for each person's medical expenses is shown under Item 6E opposite "each person." The most **we** will pay for all medical expenses is shown under Item 6E opposite "each occurrence."

2. Whom **We** Will Pay

   **We** will pay each injured person directly, the person responsible for payment, or the person or organization that provided the service.

3. What **We** Will Not Pay

   **We** will not pay any medical expense to the extent payment is required under any worker's compensation or disability benefits law or similar law.

4. Effect of Payment

   **We** are not admitting that **you** have any legal liability or responsibility by making medical expense payments.

5. Proof of Claim

   The injured person or someone acting for the person must give **us** written proof of the medical expense and must help **us** obtain the medical records and reports **we** need. If **we** ask, the injured person must submit to an examination by any doctor **we** select.

6. Legal Action for Medical Expenses

   A legal action against **us** for medical expenses cannot be brought unless **you** or **someone we protect** have done everything that **you** or **someone we protect** is required to do and at least 30 days has passed since proof of the claim has been given to **us**.

12

# Part Five. Special Provisions and Conditions

**These** Special Provisions and Conditions do not apply unless Item 10 of the **Coverage** Identification Page states that the use of the **aircraft** is limited to **pleasure and business.**

**Newly Acquired Aircraft**

If **you** notify **us** during the policy period and within 30 days after **you** acquire ownership of another aircraft, and pay the additional premium, **we** will extend the coverage of this policy to that **aircraft** if **we** insure all of the aircraft **you** own.

**Temporary Use of Substitute Aircraft**

If **you** are unable to fly the **aircraft** because of its breakdown, repair, servicing, loss or destruction **we** will extend the coverage of this policy to **your** use of a substitute **aircraft.**

**Use of Another Aircraft**

If **you** are one individual, or one individual and spouse, and use another aircraft not owned in whole or in part by **you,** or furnished for **your** regular use, **we** will extend the coverage of this policy to **your** use of another **aircraft.**

**What Coverage We Will Provide**

The coverage provided under this PART FIVE will be:

a  The **same** Liability to Others (PART THREE) coverage and Medical Expense (PART FOUR) coverage **we** provide for an **aircraft** with the **greatest** seating capacity as shown on **your** Coverage Identification **Page; and**

b  On **Newly Acquired Aircraft, the same** Aircraft Physical Damage (PART TWO) coverage and deductible amounts as **we** provide on similar category and **class aircraft** with the highest **agreed value** shown on **your** Coverage Identification **Page.** Subject to the foregoing coverage limit, **the** maximum **we** will pay for physical damage or loss is the amount **you** paid for **the aircraft,** plus the cost of any repairs or additions **you** made; or in the case of a trade-in, **the** fair market value of **the aircraft** plus the cost of any repairs or additions **you** made.

**What We Will Not Cover**

In addition to those persons and things which **we** will not cover, protect or pay in other parts of **your** policy, **we** will not provide coverage for Temporary Use of Substitute **Aircraft,** Use of Another **Aircraft** or Newly Acquired **Aircraft:**

a  Unless the requirements of the Coverage Identification Page regarding Pilots (Item 9) and Use (Item 10) are met;

b  Unless it is licensed under a standard airworthiness certificate issued by the FAA;

13

---

c  If it is a multiengine aircraft unless an **aircraft** in Item 5 on the Coverage Identification Page is a multiengine aircraft;

d  If it is a turbine powered aircraft unless an **aircraft** in Item 5 on the Coverage Identification Page is a turbine powered aircraft;

e  If it is a helicopter unless an **aircraft** in Item 5 on the Coverage Identification Page is a helicopter; or

f  If it is a seaplane or amphibian unless an **aircraft** in Item 5 on the Coverage Identification Page is a seaplane or amphibian.

## Validation

**Your** policy is comprised of the Coverage Identification Page, Parts One through Five and any Endorsements **we** issue. The signature of our **Aviation Managers** and the countersignature by an authorized representative on the Coverage Identification Page along with the signatures below of **our** president and secretary validate **your** policy.

Robert J. Campbell, Secretary          Gregory V. Ostergren, President

14

This policy is written in language that is easier to understand than language previously used. The provisions of your policy are set forth in detail in the Coverage Identification Page, Parts One through Five and Endorsements we issue. Together, these comprise your policy.

This policy may provide you with coverage for Aircraft Physical Damage, Liability to Others and Medical Expense. Be sure to review your Coverage Identification Page to confirm the coverage and limits issued to you. Then read each Part of the policy and each Endorsement we issued. This will enable you to better understand your policy.

This Policy is a legal contract between you and the Company; therefore, **IT IS IMPORTANT THAT YOU READ YOUR POLICY CAREFULLY.**

The next page provides you with a brief index to the important features of your policy.

---

## WARNING

If you have an accident or occurrence in Mexico, you may be jailed and your aircraft impounded unless you have aircraft liability coverage issued by an insurance company licensed in Mexico.

**As the Company is not licensed in Mexico, you must make certain you obtain this additional coverage before you fly into Mexico!**

---

ISSUED THROUGH



**AEROSPACE INSURANCE MANAGERS, INC.**
P. O. Box 703519 Dallas, Texas 7537O-3519

**IN THE CHANCERY COURT OF MONROE COUNTY, TENNESSEE**

TELLICO AIR SERVICES, INC. )
                                  )
    Plaintiff, )
                                    )    No. _16,185_
                                    )
v. )
                                    )
AMERICAN NATIONAL PROPERTY )
& CASUALTY COMPANY )
                                    )    _/ 45 pm_
    Defendant. )

---

**PLAINTIFF'S FIRST SET OF INTERROGATORIES AND
REQUESTS FOR PRODUCTION OF DOCUMENTS PROPOUNDED TO DEFENDANT**

---

Comes the Plaintiff, Tellico Air Services, Inc., pursuant to Rules 33 and 34 of the Tennessee Rules of Civil Procedure, and request that the Defendant, American National Property & Casualty Company, respond to the following Interrogatories and Requests for Production of Documents within thirty (30) days of service. Said Interrogatories and Requests for Production of Documents are continuing in nature.

**INSTRUCTIONS**

A.     When the context herein makes it appropriate, each singular word shall include its plural and each plural word shall include its singular.

B.     If any information called for by any interrogatory is not available in the full detail requested, such interrogatory shall be deemed to require the setting forth of the information related to the subject matter of the request in such detailed manner as is available, including, where no specific information is available, estimates, identifying and describing the method by which any estimate is made.

C.     These interrogatories are continuing in character so as to require you to file supplemental answers as soon as you obtain further information relevant to these interrogatories.

*interrogatories*

D.     Each subpart of an interrogatory should be separately answered.  Interrogatories or subparts should not be combined for the purpose of supplying a common answer, and answers should not be supplied by reference to the answer to another interrogatory or subpart, unless the answer is completely identical to the answer referred to.

E.     Where knowledge or information of, or possession or control by a party is requested or inquired of, such request or inquiry includes knowledge, information, possession or control of or by the party's agents, representatives, and unless privileged, the party's attorneys.

F.     The generality of any interrogatory or request for production is not limited by the particularity of any other interrogatory or request.

G.     If privilege is claimed with respect to any communication or document, state in reasonable detail the basis for that claim and identify the general nature of the communication or text of the document that is claimed to be confidential.

H.     If any interrogatory or request for production is objected to for any reason, describe the legal and/or factual basis for the objection to each interrogatory or request in sufficient detail to permit the court to decide the validity of the objection and, identify all documents which refer or relate to the information requested.

I.     When an interrogatory requires you to "identify all facts upon which you intend to rely" in support of a particular claim, contention or allegation, identify each and every fact logically or factually connected with the matter, the source of such information, and identify any person or persons having knowledge of such fact.

## DEFINITIONS

1.     The terms "you" and "yours" shall mean and include the party(ies) to whom these interrogatories are propounded, and any agent, attorney or other individual acting on behalf of and/or at the direction of and/or in concert with the party(ies).

2.    "Person" shall mean and include natural persons, governments (or agencies thereof), quasi-public entities, corporations, partnerships, ventures and all other forms of organization or association, and includes both the singular and the plural.

3.    "Officers," "directors," "agents," or "employees" shall mean any person serving at a relevant time in any such capacity even though no longer serving in such capacity.

4.    "And" or "or" means and/or, that is, the conjunctive and the disjunctive.

5.    As used herein, "document" means without limitation, the following items whether printed, written or produced by hand:   all original written, recorded, or graphic matters whatsoever and all non-identical copies, thereof, including but not limited to, papers, books, records, letters, photographs, slides, tangible things, correspondence, communications, telegrams, cables, telex messages, memoranda, notes, notations, work papers, transcripts, cables, minutes, reports and recordings of telephone or other conversations, or of interviews, or of conferences, or of other meetings, affidavits, statements, summaries, opinions, reports, studies, analyses, bulletins, notices, announcements, advertisements, instructions, charts, manuals, brochures, publications, schedules, price lists, client lists, journals, statistical records, desk calendars, appointment books, diaries, lists, tabulations, books of account, receipts, records and invoices reflecting business operations, sound recordings, computer print-outs, "Web Sites" on the "Internet," "e-mail" communications, all records kept by electronic or intangible means, photographic means or mechanical means, any notes, computer print-outs, books of account, receipts, records and invoices reflecting business operations, all records kept by electronic, photographic, or mechanical means, any notes or drafts relating to the foregoing, contracts, agreements, purchase orders, estimates, accounts, ledgers, journals, accounting records, shipping records, bills of lading, daily invoices, receipts, bills, books, job reports, memoranda, notes, letters, speeches, telegrams, diaries, calendar or diary entries, schedules, maps, charts, photographs and negatives, releases, appraisals, evaluations, estimates, opinions, studies, analyses, summaries, magazines, booklets, pamphlets, inspection records,

observation reports, circulars, bulletins, instructions, minutes, checks, tabulations, questionnaires, films or tapes, shop drawing logs, submittal logs, surveys, correspondence, records (of meetings, conferences and telephone or other conversations or communications), cables, drawings, sketches, working papers, financial statements, computer data as well as any other tangible thing upon which information is recorded by typing and writing, sound or any other manner, and including preliminary versions, drafts, revisions, duplicates, copies containing additional or marginal writings, or other versions of any kind or sort whatsoever of the foregoing, and any supporting, underlying or preparatory material in the possession, custody or control of the plaintiff, its employees, attorneys, agents and/or representatives, and all things similar to any of the foregoing. In all cases where originals are not available, "document" also means identical copies of original documents and non-identical copies thereof.

6.    The term "all documents" shall mean and include all documents in your possession or under your control or the control of your agents, attorneys or other individuals or acting for you, regardless of when prepared or made, relating to any fact, transaction, or occurrence pertaining to the instant litigation.

7.    "State the basis" of the claim or allegation shall mean to provide a reasonably detailed explanation of the facts, information and matters presently known or available to the party(ies) to whom these interrogatories are propounded that support or tend to support or that the party believes supports or tends to support such a claim or allegation, including but not limited to, when applicable, the dates, time and place, parties to a transaction, events, conversation or occurrence; the person or persons who participated or were involved therein; the substance thereof, and the principal for whom such person or persons purported to act; and further including but not limited to, the identity of each document containing, referring to, relating to or concerning any claim or allegations; the identity of each person with any knowledge with respect to each such claim or allegations.

8    The term "occurrence," unless otherwise indicated, means the time(s), place(s), and circumstances of the events about which you complaint in this suit.

9.    The term "communication" means the expression of any statement, question, command, idea, knowledge, information, or other matter, whether by speech, writing, signs, or otherwise, and includes any transfer of data or information from one location to another by electronic or similar means.

10.    As used herein, "identify" when used with respect to a person or persons means:

    a.    State the name, address(es) and telephone numbers of such person;

    b.    Note the name of the present employer or employers, job title, if any, and date of employment of each such person; and

    c.    If such person was affiliated at any time with the person to whom these interrogatories are propounded by employment or otherwise, state the nature (including job title, if any), any dates of such affiliation.

    If such present address is not known, the answer shall so state; and in lieu of such address, the answer shall state the person's last known address and the last known date the person resided or was located there.

11    The term "identify" when used in relationship to the term "document" shall require that you state with regard to each document:

    a.    The date appearing on such document, and if no date appears thereon, the answer shall so state and shall give the date or approximate date such document was prepared;

    b.    The identifying or descriptive code number, file number, title or label of such document;

    c.    The general nature or description of such document (i.e., whether it is a letter, memorandum, drawing, etc.) and the number of pages of which it consists;

    d.    The name of the person who signed such document, and if it was not signed, the answer shall so state and shall give the name of the person or persons who prepared it;

e.    The name of the person to whom such document was addressed and the name of each person other than such addressee to whom said document or copies thereof were given or sent;

f.    The general subject matter of such document;

g.    The name of the person having possession, custody or control of such document; and

h.    Whether or not any draft, copy or reproduction of such document contains any postscript, notation, change or addendum not appearing on said document itself, and if so, the answer shall give the description as herein defined of each such draft, copy or reproduction.

The foregoing information shall be given in sufficient detail to enable a party or person to whom a subpoena is directed to identify fully the document sought to be produced and to enable counsel to determine that such document, when produced, is in fact the document so described.

12.    The word "identify" when used with respect to an oral communication shall mean to:

a.    State the date and place or means of such communication;

b.    Identify each person participating therein and each person who was present during any part of such communication;

c.    State what was said by each participant in the course of such communication, or if not know or recalled, the substance of such communication.

d    Identify any other person present or overhearing such conversation or communication;

e.    State whether there are any documents which set forth, summarize or refer to any portion of such oral communication; and

f.    If such documents exist, identify each such document and each person having custody of the document.

13. The word "identify" when used with respect to any electronic communication, by "e-mail" or otherwise, shall mean to:

a. State the date of such communication;

b. Identify each person participating therein and each person who was present during any part of such communication and any "e-mail addresses" of each person;

c. State what was stated or communicated by each participant in the course of such communication, or if not know or recalled, the substance of such communication;

d. State whether there are any documents which set forth, summarize or refer to any portion of such communication;

e. If such documents exist, identify each such document and each person having custody of the document; and

f. State the "Internet" address(es) for any communication involving a "Web Site."

14. The word "identify" when used in any context other than those referred to above, means to provide such information as would enable a reasonably intelligent person to locate, describe, distinguish, understand, evaluate or analyze the subject matter, including, without limitation, locations, boundaries, descriptions, identifying marks, dates, amounts, terms, names, parties, values, numbers, labels, provisions, witnesses, signatories, writers, draftsmen, owners, debtors, principals, partners, agents, officers, employees or custodians of the subject matter

15. The phrase "refer or relate to or relating to" shall mean to be in any way logically or factually connected with the matter discussed, refers to, concerning, discussion, mentioning, evaluating or analyzing, in whole or in part, directly or indirectly.

16. "Complaint" means the Complaint filed herein and any amendments or supplements thereto.

17. The word "person" or "persons" means any natural individual or corporation, firm, partnership, proprietorship, association, joint venture, governmental agency, or any other business organization or legal entity.

**INTERROGATORIES AND REQUESTS FOR PRODUCTION OF DOCUMENTS**

1.      State the full name, address, telephone number, present employer, and job classification or position of each and every person assisting in the preparation of the answers to these Interrogatories and Requests for Production of Documents. Please state the number(s) of each interrogatory and/or request for production of documents that each person assisted in answering.

**RESPONSE:**

2.      State the names of all adjusters, claims persons, claims supervisors, claims managers, third-party administrators, attorneys, or other personnel at any time employed or hired by American National Property & Casualty Company to handle, participate in, or investigate Tellico Air Services, Inc.'s claim. With respect to each such person, state:

a.      The capacity in which he/she was employed or hired;

b.      The period of time he/she was so employed or hired;

c.      Whether he/she is presently employed by you and in what capacity;

d.      His/her present or last known address and telephone number; and

e.      His/her present or last known employer.

**RESPONSE:**

3.      Did American National Property & Casualty Company receive any recommendations with respect to payment or settlement of Tellico Air Services, Inc.'s claim, evaluations as to the claim's worth, or factual summaries relating thereto from any of your officers, employees, or other agents or from any other person hired by you to investigate or evaluate Tellico Air's claim? If your answer is in the affirmative, state:

a.      The name, address, and telephone number of the person making such recommendation, evaluation, or summary;

b.      The date thereof;

c. Whether it was oral or in writing,

d. To whom it was made;

e. State in detail the substance of the same,

f. If oral, whether your files contain any memoranda reflecting the same;

g. If in writing, the name and address of the person having immediate custody thereof;

h. The action, if any, taken by you with respect thereto;

i. The name, address, job classification or title of the person taking such action;

j. Whether there is any memorandum in your file concerning such action;

k. The name and address of the immediate custodian of records of any memoranda referred to in your answers to f and j above.

**RESPONSE:**

4. Identify any and all individuals who have inspected Tellico Air Services, Inc.'s Metroliner aircraft. Please identify and produce any and all documents arising from or relating to said inspection(s).

**RESPONSE:**

5. State in detail any and all reasons why Tellico Air Services, Inc.'s claim for property damage to its aircraft in the amount of $236,569.19 was denied, and state the factual basis and source of information for each reason. You should identify and produce any and all documents arising from or relating thereto.

**RESPONSE:**

6. Have you, or anyone acting on your behalf, retained an expert witness to testify at trial? If so, state:

a. The name, address, telephone number, occupation or profession, and the areas of expertise of each such expert;

b. The substance of the facts to which each expert is expected to testify;

c. The opinions held by each such expert to which each expert is expected to testify; and

d. The grounds of each opinion to which each expert is expected to testify.

**RESPONSE:**

7. Identify any and all persons with testimony or knowledge regarding the Complaint in this matter and/or Tellico Air Services, Inc.'s claim for property damage to its Metroliner aircraft.

**RESPONSE:**

8. Please describe any admissions or statements that you contend Tellico Air Services, Inc., Mr. Larry Hamilton, and/or any employees or agents acting on behalf of Tellico Air Services, Inc. have made relating any issue in this case, including the allegations contained in the Complaint or relating to Plaintiff's claim for damages to its Metroliner aircraft. Your response should include the substance of the alleged admission or statement, the date, location, and circumstances surrounding it, and the person(s) to who alleged statements was/were made.

**RESPONSE:**

9. Do you or your attorney know of any photographs or motion pictures that have been made of Tellico Air Services, Inc.'s 1979 Swearingen Metroliner N324TA? If so, state the name of the person(s) making the photographs or motion pictures and the dates the photographs or motion pictures were taken. Please produce said photographs or motion pictures.

**RESPONSE:**

10. Please state with particularity the substance of any and all conversations you have had with any and all employees or agents of Tellico Air Services, Inc. or Larry Hamilton regarding the present lawsuit and/or Tellico Air Services, Inc.'s claim for property damage to its

1979 Swearingen Metroliner aircraft. Your answer should include the names of the employees with whom you conversed and the date and time of said conversations.

**RESPONSE:**

## REQUESTS FOR PRODUCTION OF DOCUMENTS

1. Produce all documents and things requested, identified, or referred to in your answers to the Interrogatories.

**RESPONSE:**

2. Please produce any and all expert reports that were or will be relied upon in whole or in part by any testifying expert in this case.

**RESPONSE:**

3. Please produce the curriculum vitae of any and all experts identified in your response to the preceding Interrogatories.

**RESPONSE:**

4. Please produce any and all written reports, opinions, summaries of opinions, correspondence, statements, or documents that have been reviewed, considered, or provided by any expert identified in your responses to the preceding Interrogatories.

**RESPONSE:**

5. Please produce all documents or things furnished to any expert witness identified in response to the preceding Interrogatories, including but not limited to any correspondence, photographs, drawings, witness statements, etc., whether furnished by you, your counsel, your expert witnesses, etc.

**RESPONSE:**

6 Please produce all documents or things that set forth the facts or basis of the opinion(s) of any testifying expert witness identified in response to the preceding Interrogatories, or upon which such experts rely in forming their opinions

**RESPONSE:**

7. Please produce any and all written statements, recorded statements, or court reporter statements that you have obtained from the Plaintiff in this case, or from any agent or employee of Plaintiff.

**RESPONSE:**

8. Please produce any and all photographs and/or motion pictures taken of the Metroliner aircraft, as requested in Interrogatory Number 9.

**RESPONSE:**

9. Produce your entire file relating to or arising from Tellico Air Services, Inc.'s claim for property damage to its 1979 Fairchild SA-226TC Metroliner II N324TA that occurred on or about February 26, 2003, or that of any third-party administrator, independent adjuster, or any similar person acting on your behalf.

**RESPONSE:**

10. Produce any and all estimates of property damage sustained to Tellico Air Services, Inc.'s 1979 Fairchild SA-226TC Metroliner II N324TA that occurred on or about February 26, 2003.

**RESPONSE:**

11. Produce any and all documents and/or correspondence of any kind between you and Tellico Air Services, Inc. or any of its agents or employees that arises from or relates to the plaintiff's claim for property damages to its 1979 Fairchild SA-226TC Metroliner II N324TA that occurred on or about February 26, 2003.

**RESPONSE:**

12. Please produce any and all documents in your possession or in the possession of your adjusters, claims persons, claims managers, third-party administrators, etc. which describe, discuss, comment on, or communicate information with respect to the subject matter of the Complaint or Tellico Air Services, Inc.'s claim for property damage to its 1979 Fairchild SA-226TC Metroliner II N324TA.

**RESPONSE:**

Respectfully submitted this the 24th day of February, 2009.

TELLICO AIR SERVICES, INC.

BY:

JOSHUA M. BALL (BPR #020626)
Attorney for Plaintiff
HODGES, DOUGHTY & CARSON
617 W. Main Street
Post Office Box 869
Knoxville, Tennessee 37901-0869
(865) 292-2307

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and exact copy of the foregoing **Plaintiff's First Set of Interrogatories and Requests for Production of Documents Propounded to Defendant** has been served upon the following counsel for parties in interest herein by delivering same to the offices of said counsel, or by mailing same to the offices of said counsel by United States Mail with sufficient postage thereon to carry the same to its destination.

> American National Property & Casualty Co.
> 1949 East Sunshine
> Springfield, Missouri 65899-0001
> c/o Tennessee Commissioner of Commerce & Insurance
> 500 James Robertson Parkway, 4th Floor
> Nashville, Tennessee 37243

This the 24th day of February, 2009.

**HODGES, DOUGHTY & CARSON**

By:

Joshua M. Ball

Q:\JMB\T\Tellico Air Services\Interrogatories.doc



### STATE OF TENNESSEE
**DEPARTMENT OF COMMERCE AND INSURANCE**
500 JAMES ROBERTSON PARKWAY
NASHVILLE, TN 37243-1131

March 6, 2009

American National Prop & Cas Company
1949 East Sunshine, Corp. Centre
Springfield, MO 65899
NAIC # 28401

CERTIFIED MAIL
RETURN RECEIPT REQUESTED
7008 1830 0000 6982 0787
Cashier # 1981

Re: Tellico Air Services, Inc.  V.  American National Prop & Cas Company

Docket # 16185

To Whom It May Concern:

We are enclosing herewith a document that has been served on this department on your behalf in connection with the above-styled matter.

I hereby make oath that the attached Breach Of Contract Complaint was served on me on March 3, 2009 by Tellico Air Services, Inc. pursuant to Tenn. Code Ann. § 56-2-504 or § 56-2-506. A copy of this document is being sent to the Chancery Court of Monroe County, TN.

Brenda C. Meade
Designated Agent
Service of Process

Enclosures

cc: Chancery Court Clerk
Monroe County
105 College Street, Ste 2
Madisonville, Tn 37354-2400



**EXHIBIT**

2